JACOB ELIOT v. MADISON G. WHITAKER.

Where there is anything in a deed which conduces to show what land was intended to be conveyed, it was properly left to the jury to determine whether the land so described was the "*locus in quo.*"

The 53d section of the act about estates confers equity jurisdiction to decree a specific performance of the contracts of decedents for the sale of lands, and every intendment must be presumed in favor of their judgments. (Paschal's Dig., Art. 1313, Note 487.)

Courts of equity have always regarded an imperfect or defectively executed

deed as a mere title bond, or executory contract, which will be specifically enforced by such courts, and carried into full grants against the covenantor.

It is for the judge to determine upon the legal effect of all documentary evidence; and, if satisfied that it ought to have no weight with the jury, it is his duty to exclude it.

Where a party purchased, knowing that his grantor had previously sold the land to another, it is such a fraud as to destroy the conveyance as a muniment of title, under the 15th section of the act of limitation. (Paschal's Dig., Art. 4622, Note 1031.)

ERROR from Navarro. The case was tried before Hon. JOHN GREGG, one of the district judges.

The record is exceedingly voluminous. In the original suit Madison G. Whitaker sued Jacob Eliot in an action of trespass to try title. There was an amendment, which brought in Croft and Robertson county as defendants. The verdict was against all the defendants. Eliot only prosecuted error. The facts and points relied upon by the counsel are sufficiently noticed in the opinion of the judge.

*William Croft,* for plaintiff in error, relied upon the indefiniteness in the description in the deed to the plaintiff. (Howard v. Morse, 6 How., 205.)

The county court had no jurisdiction to grant specific performance. (Jones v. Taylor, 7 Tex., 240; Peters v. Philips and Wife, adm'rs., 19 Tex., 70; Booth, adm'r., v. Todd, 8 Tex., 137; Kent v. Kelso, Dall., 523; Wynns & Lawrence v. Underwood, 1 Tex., 48; Miller v. Miller, 10 Tex., 319; Baker *et al.* v. Chisholm *et al.*, 3 Tex., 157.)

*Hancock & West,* for defendant in error.

LINDSAY, J.—This is an appeal from a judgment of the district court, rendered in an action of trespass to try title for a half league of land in Navarro county. The appellee brought his suit against the appellant, Jacob Eliot, in 1857, to the spring term of the district court, and at a subsequent term of the court he amended his pleadings, by introducing two new parties defendant, William Croft and

the county of Robertson. Upon the trial, a verdict was returned, and a judgment rendered at the fall term, 1860, in favor of the plaintiff, against all the defendants jointly. From this judgment an appeal was prayed by the defendant, Jacob Eliot, alone, and the appeal bond executed by him and his sureties. The other defendants are seemingly resting contented with the judgment, and have taken no steps to disturb it. At the first blush, it being a joint judgment against all the defendants, it would seem that an appeal taken by one co-defendant from a joint judgment ought to inure to the benefit of all the co-defendants, unless some proceedings were had for a severance in the court below. Such a conclusion would follow from the principles of the common law. But as a matter of practice in this state a different rule seems to obtain. At least such a rule is recognized in the cases of Burleson v. Henderson, 4 Tex., 49, and Lacy v. Williams, 8 Tex., 182. From the entirety of this judgment, if, in investigating the assignment of errors by the appellant, we should find error enough to reverse the judgment, that reversal would inure to the benefit of the co-defendants, as well as to the appellant. But those co-defendants not being properly before this court on the appeal, we are not called upon to examine their special defenses and the errors which may have been committed against them on the trial of the cause. For a proper understanding of the law of this case, and the justice or injustice of the judgment below, it becomes necessary to state, as briefly as the pleadings and the voluminous record will allow, the main facts upon which the plaintiff relied for a recovery, and upon which the defendant based his defense.

It appears by the record, that on the 11th day of October, 1835, the government of Coahuila and Texas, by her commissioner, George Antonio Nixon, in Burnet's colony, granted to John Peoples, who petitioned to become a colonist as Jehu Peoples, a league of land in said colony, situated on Richland creek, a southwest branch of the Trinity,

setting forth said league by metes and bounds. On the
30th day of September, 1837, the petition alleges that the
grantee, Jehu or John Peoples, conveyed the northeast half
of said league to Richard Sparks, the deed for which was
duly recorded in Robertson county, on the 25th day of July,
1838, the boundary of which county then embraced the
county of Navarro, where the land is now situated. Some-
time in the year 1850, to wit, on the 27th day of August,
S. F. Sparks and James M. Sharp, administrators of Rich-
ard Sparks, deceased, by virtue of an order of the chief
justice of the county court of Nacogdoches, (which court
had made such order upon the petition of the plaintiff,
Madison G. Whitaker, alleging that he held a written agree-
ment with said Sparks for the conveyance to him of a league
of land west of the Trinity, as soon as the land office was
opened and grants could be made, and a deed, imperfectly
executed by Sparks in his lifetime, in partial compliance
with said written agreement, attempting to convey the
northeast half of the land in controversy,) conveyed by
deed to Madison G. Whitaker the northeast half of the
league granted by George A. Nixon, commissioner, to Jehu
Peoples, lying west of the Trinity river. This deed of the
administrators of Richard Sparks, deceased, made under a
decree of the chief justice of Nacogdoches county, was re-
corded in the county of Navarro, where the land lay, on
the 12th day of April, 1856. The above is a succinct state-
ment of the nature and character of the muniments of title
upon which the plaintiff relied for the recovery of the land
in controversy.

The defendant, Jacob Eliot, the only real appellant in
this court, in his answer, insists that he is the legal owner
of the John or Jehu Peoples league of land, and makes
this exhibition of title, to wit: by deed from John or Jehu
Peoples, bearing date the 12th day of November, 1850,
duly recorded in Navarro county; also by deed, bearing
date the 25th day of May, 1852, from the surviving wife

and all the children of John or Jehu Peoples, then deceased, duly recorded, also in the said county of Navarro. In his answer, he denies all notice, actual or constructive, of the existence of the plaintiff's title, and alleges that, although the county of Navarro was organized in 1846, the deeds of the plaintiff were not put upon record there until April 12, 1856. He further alleges that, in 1852, he had instituted a suit against some tenants in possession, who were holding, of course, adversely to his claim, and that said suit was then still pending and undetermined. The defendant further alleges, that he had been in possession of the land in controversy, by his tenants, for more than three years before the institution of the plaintiff's suit, under title, or color of title, from the sovereignty of the soil. Upon the question of possession the defendant chiefly relied for a successful defense, after the plaintiff's muniments of title were all admitted by the court. A vast amount of proof was introduced, the consideration of which we are happily relieved from, as it was the peculiar province of the jury to weigh it, and to consider the force and effect of all testimony legally introduced on the trial.

In the progress of the trial below, various questions were raised as to the admissibility of testimony, and the rulings of the court upon these questions, in admitting and excluding testimony, are assigned for error in the record.

The appellant's counsel assigns for error the admission of a deed of conveyance from John or Jehu Peoples (for we must regard John and Jehu as the same identical man, from the pleadings and proofs of both plaintiff and defendant) to Richard Sparks. The objection of defendant's attorney to the introduction of this proof was, that it described the land therein attempted to be conveyed as lying on Red Land bayou, southwest of Trinity river, instead of on Richland creek, a southwest branch of the Trinity, as set forth in the grant to John Peoples. But the conveyance goes on to recite, that it was the northeast

half of a league, granted to him as a colonist in 1835, by George A. Nixon, commissioner, according to the fact as it appears by the grant itself. This misdescription or variance in the recital of the deed and that of the grant was properly submitted by the court to the jury. If there was anything in the deed itself which conduced to show that the land set forth in the grant, and the land intended to be conveyed in the deed, was part and parcel of the same identical land, it was right and proper to do so. We think there was enough in the other recitals of the deed from which the jury might infer that the northeast half of the same league was intended. We presume the district judge so regarded it, and he very properly admitted it to go to the jury for their consideration.

It is also objected, that the court judged erroneously in allowing the deed made by the administrators of Richard Sparks, in obedience to a decretal order of the chief justice of Nacogdoches county, to the plaintiff, Madison G. Whitaker, as well as the transcript of the proceedings of the said county court, showing the foundation of said decretal order, to go to the jury as evidence or proof in the cause. Upon this objection at the trial to the admission of this proof, and upon the assignment of error, the question is raised as to the jurisdiction of the county court, and the power of the chief justice to enter the decree ordering the administrators to make the deed. The proceeding in the county court of Nacogdoches county was founded upon article 1313 of the statutes, (Paschal's Dig., p. 315,) passed 20th of March, 1848. This section has been pronounced, *ex cathedra*, so to speak, as the only section of the statute law under which litigation can be allowed in the probate court. Be that as it may, this section certainly confers, *pro hac vice*, upon the probate judge an equitable power, and it has to be exercised according to the rules and principles of equity. Every intendment must be indulged in favor of the correctness of the action of the chief justice

until the contrary is made manifest. This proceeding was had in 1850, only two years after it was allowed by law.

In initiating it in that court, the complainant, Madison G. Whitaker, stated in his petition that Richard Sparks, on the 17th day of November, 1836, made and delivered to him a title bond, or instrument in writing, in which he bound himself to convey to the complainant, for a consideration therein acknowledged, "a league of land, so soon as the land office opened and the title for the same could be made by a commissioner, or some person authorized by law to make the same; which said land was to be located on the west side of the Trinity river." He further alleged, (the said Richard Sparks having acquired by purchase, in the meantime, the northeast half of the Jehu Peoples headright league, west of the Trinity river,) that the said Richard Sparks afterwards, "in his lifetime, attempted to make a partial compliance with his said bond, by conveying to the petitioner, on the 21st day of March, 1838, the northeast half of a league of land granted to Jehu Peoples, in the year 1835, by George A. Nixon, commissioner, which grant was described in his deed as having been made to one John Peoples, instead of to the said Jehu, the actual grantee." Both of these instruments of writing were made *profert* of in the petition; and, regarding the latter as defective and insufficient to make the feoffment complete, he sought the aid of that court, in the exercise of an equitable power under the statute, to invest him with the complete fee. Courts of equity have always regarded an imperfect or defectively executed deed as a mere title bond or an executory contract, which will be specifically enforced by such courts, and carried into full grant against the covenantor. For just such cases of title bonds, executed by testators, or intestates, in their lifetime, the legislature has seen fit, in its wisdom, to invest the county court with a concurrent jurisdiction with the courts of general common law and equity jurisdiction to grant relief. We think,

xxx—27

therefore, the chief justice of Nacogdoches county did not
transcend his authority in assuming and exercising juris-
diction in this case.   The deed was made in conformity
with the order of that court, and was properly admissible
as testimony; and it was the province of the jury to judge
whether its recitals and descriptions were sufficient to es-
tablish the identification of the land therein set forth with
the northeast half of John Peoples' headright league, on
Richland creek, a southwest branch of the Trinity.   The
transcript of the record, upon which the deed was founded,
was a prerequisite to the introduction of the deed, and was
correctly allowed to be read to the jury by the court.
There was enough, in our judgment, not only to indicate,
but to demonstrate, the identity of the land.   And if there
were only slight evidence conducing to establish the fact—
it being the exclusive province of the jury to judge of the
facts, if they should even base their finding upon such
slight evidence—a court would hesitate long before disturb-
ing their verdict.

There are questions raised by the third and fourth
assignments of error by the appellant which demand
some notice.   A writing, purporting to be an agreement ·
executed between the co-defendants, Eliot and Croft, in
the year 1852, which agreement professes to convert what
is called by them an adverse holding by Croft against
Eliot of some blocks of ground in Corsicana, which is
situated on a part of the league, into an amicable holding,
Croft binding himself to bring suit to oust other adverse
holders upon the league, and to get the title to the league ·
generally settled for a consideration therein set forth, and
the said Croft agreeing to hold the land, as a tenant, for
five years, [was excluded from the jury, and the point saved
by exception.]   We cannot perceive for what purpose such
an instrument could be introduced.   Such an instrument,
if admitted, would have conduced to show neither an
actual possession, adverse or otherwise, by Croft, nor

the running of the statute of limitation. It would have contributed to elucidate neither proposition; and its admission would have conceded the right of parties to manufacture testimony for themselves, which is totally repugnant to the plainest principles of justice. We think it was justly excluded, and no error was committed to the prejudice of the defendants by such exclusion. It was for the judge, upon inspection of the instrument, when offered, to determine the legal effect of the instrument; and, if satisfied it ought to have no weight with the jury, it was his duty to exclude it.

In refusing to admit the introduction of McKie as a witness, after the testimony had been closed and the argument of counsel had been commenced, the court was but exercising a discretion which is fettered by no known rule of law or of practice. The individual had not been summoned as a witness in the cause, and the party took the risk, upon his mere verbal promise, that he would be present before the testimony closed. Certainly, there was not such an abuse of discretion in refusing the application to admit his testimony, at such a stage of the cause, as would authorize a revision of the exercise of that discretion by this court. Besides, from the affidavit of the proposed witness himself, filed upon the motion for a new trial, his testimony would not have served to elucidate the issues involved in the investigation.

In reference to assignment of errors in the charges of the court, we deem it unnecessary to go into an analysis of those charges, as it is quite apparent that those charges were more favorable to the appellant than the facts seem to us to warrant. The charge, that the jury "may look to any paper that may be referred to in the deed from Peoples to Sparks, to identify the land," could not be misleading. For, if no paper, introduced as evidence, was referred to in that deed, they could have no paper of that character as a predicate for any conclusion as to the identity of the

land. And certainly they could not refer to any paper which was not before them, and which was not evidence in the cause.

Having disposed of the antecedent matters, the question remains to be settled, did the defendant below, and the appellant in this court, sustain, by his proof, his defense of the statute of limitation of three years by actual, peaceable, continued, adverse, and exclusive possession, under title, or color of title, from the sovereignty of the soil? If the defendant had such actual adverse possession continuously for a period of three years before the institution of the plaintiff's suit, under title, or color of title, from the sovereignty of the soil, then the plaintiff's superior title will not avail him in this possessory action, and his remedy is gone. What actually constitutes the character of possession contemplated in this act is a mixed question of law and fact, and it is sometimes difficult, in particular cases, to determine what is a title, or color of title, from the sovereignty of the soil. This court has at various times defined it in reference to the numerous cases which have been before it. But the facts of all the cases are quite variant, and hence the impossibility of establishing any fixed and definite rule as applicable to all. In this case there was a grant from the sovereignty of the soil of the land in controversy to John or Jehu Peoples. That grant was recorded in the county of Robertson, where the land was situated. This was constructive notice, according to the laws of registration, of the appropriation of this particular portion of the public domain. John or Jehu Peoples conveyed one moiety of that grant to Richard Sparks, which was also recorded in the same county of Robertson in 1838, in which county the land was still situated. This, too, was constructive notice to all the world that the title had passed out of John or Jehu Peoples, and of which fact every one is presumed to have knowledge, and from a want of which actual knowledge no one should be permitted to set up the plea of ig-

norance, and claim that there was "intrinsic fairness and honesty" in his purchase from a vendor who had already parted with his title, and whose vendee had duly availed himself of the law to give notice of his claim to all the world by his memorial or muniment of title being duly registered. Any other interpretation of this statute, in reference to a case like the present, would subvert the whole policy of the registration laws of the state.

We cannot concede, then, from the facts of this case, that the appellant has a title, or color of title, deducible from the sovereignty of the soil, without conceding at the same time that the acts of men, which operate in fraud of the law, may be connived at and tolerated by the courts of the country, and left unrestrained and unchecked by the very laws enacted for their government. We conceive therefore that no such title, or color of title, was possessed by the appellant, and the statute of limitation of three years, even if he had actual possession of the land in controversy for more than that period before the institution of the suit of the appellee, could not avail him in his defense. And although he relied upon the statute of five years' limitation in his defense, the evidence in the cause does not sustain his plea. We discover no fatal error in the finding of the jury, nor in the rulings and judgment of the court. Wherefore, the judgment of the court below is

AFFIRMED.