DIFFIE v. WHITE et al. (No. 1558.)*

(Court of Civil Appeals of Texas. Texarkana. Feb. 17, 1916. On Motion to Reform Judgment, March 9, 1916.)

1. EVIDENCE ⬉460(7) — PAROL EVIDENCE — DESCRIPTION IN DEED.

In a deed of land described as "420 acres out of the northeast portion of the Robert Hill survey," the uncertainty of description, if any appeared upon the face of the deed, and extraneous evidence was inadmissible to supply what was lacking.

[Ed. Note.—For other cases, see Evidence, Cent. Dig. § 2121; Dec. Dig. ⬉460(7).]

2. DEEDS ⬉38(1) — INSUFFICIENCY OF DESCRIPTION—VALIDITY.

Such deed would not be treated as void for want of a sufficient description of the land conveyed, unless the description was so defective that the land could not be located by an inspection of the deed and a resort to those muniments or evidences to which it expressly or impliedly refers.

[Ed. Note.—For other cases, see Deeds, Cent. Dig. § 70; Dec. Dig. ⬉38(1).]

3. DEEDS ⬉41 — SUFFICIENCY OF DESCRIPTION—EVIDENCE.

Such deed, expressly referring to the land as a part of the Robert Hill survey, made it proper to resort to the field notes of that survey to ascertain its location, form and area.

[Ed. Note.—For other cases, see Deeds, Cent. Dig. § 84; Dec. Dig. ⬉41.]

4. DEEDS ⬉38(2)—PATENTED LAND—SUFFICIENCY OF DESCRIPTION—"PORTION."

A deed, conveying "420 acres out of the northeast portion of the Robert Hill survey," was sufficient, where it appeared that the survey contained 836 acres and was in the shape of a square, with all of its boundaries running toward the four cardinal points of the compass, and that the grantor had previously conveyed 231 acres in the northwest corner of the survey and 202 acres in the southwest corner connecting with the tract first conveyed, as the word "portion" might be treated as synonymous with "part," so that the northeast part of the survey was that part lying between the north and east boundary lines, and where the number of acres to be taken from that part of the survey was equal to or exceeded the area contained in the northeast quarter when subdivided into four equal parts, there was an intent to include at least all of the land in that quarter, and to fix the northeast corner of the survey as the northeast corner of the land conveyed, and from that point the law would construct a survey in the form of a square sufficiently large to embrace the number of acres called for.

[Ed. Note.—For other cases, see Deeds, Cent. Dig. §§ 65, 71; Dec. Dig. ⬉38(2).

For other definitions, see Words and Phrases, First and Second Series, Portion.]

5. DEEDS ⬉38(1) — "DESCRIPTION"—OFFICE.

The office of the "description" in a deed is not to identify the land, but to furnish means of identification.

[Ed. Note.—For other cases, see Deeds, Cent. Dig. §§ 65–67, 70, 73–75, 79; Dec. Dig. ⬉ 38(1).

For other definitions, see Words and Phrases, First and Second Series, Description.]

6. EVIDENCE ⬉452—EXTRINSIC EVIDENCE—DESCRIPTION—"LATENT AMBIGUITY."

A "latent ambiguity" arises when a deed expresses more than one method for identifying the lines or corners of a grant, and which do not harmonize when applied to the ground, or when the description is such that it may, without contradicting or ignoring its terms, be applied to more than one tract of land; but no latent ambiguity arises from the mere fact that the calls in the description conflict with some prior conveyance not referred to or made a part of the instrument.

[Ed. Note.—For other cases, see Evidence, Cent. Dig. §§ 2093–2101; Dec. Dig. ⬉452.

For other definitions, see Words and Phrases, First and Second Series, Latent Ambiguity.]

7. DEEDS ⬉93 — CONSTRUCTION—INTENT OF GRANTOR.

The intention of the grantor must be gathered from the language used.

[Ed. Note.—For other cases, see Deeds, Cent. Dig. §§ 231, 232; Dec. Dig. ⬉93.]

8. EVIDENCE ⬉450(3)—EXTRINSIC EVIDENCE—"LATENT AMBIGUITY."

Where there is no conflict in the terms of the description of a deed, and it fits one tract of land and no other, there is no "latent ambiguity," and no occasion for the admission of extrinsic evidence to explain the intention of the grantor.

[Ed. Note.—For other cases, see Evidence, Cent. Dig. §§ 2068, 2069; Dec. Dig. ⬉ 450(3).]

9. DEEDS ⬉114(5)—DESCRIPTION—CONSTRUCTION.

Where the assignee of a survey of 836 acres in the form of a square, with all its boundaries running toward the four cardinal points of the compass, conveyed 231 acres from the northwest corner and 202 acres from the southwest corner, connecting with the first tract, his deed conveying "420 acres out of the northeast portion or part, fixing only the northeast corner," evidenced an intention that the land conveyed was to be regarded as forming a square, with all sides running toward the four points of the compass, conforming to the north and east boundary lines of the survey, and leaving the distances south and west to which the call should be extended a mere matter of mathematical calculation, whereby the block would be bounded by four sides 1,539.8 varas long.

[Ed. Note.—For other cases, see Deeds, Cent. Dig. §§ 329, 388; Dec. Dig. ⬉114(5).]

10. ADVERSE POSSESSION ⬉71(3)—CONVEYANCE BY ONE WITHOUT TITLE.

The three-year statute of limitations was not available where the portion claimed had been disposed of by the assignee of a survey prior to the execution of the bond for title to the one under whom the adverse party claimed.

[Ed. Note.—For other cases, see Adverse Possession, Cent. Dig. §§ 422, 423; Dec. Dig. ⬉ 71(3).]

On Motion to Reform Judgment.

11. TRESPASS TO TRY TITLE ⬉32—PLEADING—ADMISSION—FAILURE OF TITLE.

In trespass to try title, allegations that plaintiffs purchased the land described from one N. in consideration of a cash payment and certain vendor's lien notes, and that N. had executed to them a deed with general warranty of title; that after the purchase they found that it was clouded by reason of the adverse claims of the unknown heirs of a certain person, and other parties defendant; that their title was threatened by the adverse claims set out in the answers of the defendants; that they believed that the titles set up by defendants were paramount to their own title; and that they would be dispossessed, asking a judgment against their warrantor and a cancellation of the vendor's lien notes—was in effect an admission that plaintiffs

had no title to that part of the land described in their petition.

[Ed. Note.—For other cases, see Trespass to Try Title, Cent. Dig. §§ 39–41; Dec. Dig. ☞32.]

12. APPEAL AND ERROR ☞1178(6)—DISPOSITION OF APPEAL—REMAND FOR TRIAL OF DAMAGES.

In trespass to try title, where the warranty of plaintiffs' grantor failed to the extent of the land lost to plaintiffs by the reformation of the judgment, but where the warrantor was a party to the suit, not denying his warranty, and there was no proof of the exact amount of the land which would be lost, the case, as between the plaintiffs and their warrantor, would be remanded, to enable them to try the issue of damages resulting from a breach of the warranty.

[Ed. Note.—For other cases, see Appeal and Error, Cent. Dig. §§ 4614, 4615; Dec. Dig. ☞1178(6).]

Appeal from District Court, Red River County; Ben H. Denton, Judge.

Trespass to try title by J. A. White and another, in which, after White's death, his nephew and children were substituted as parties plaintiff, against unknown heirs of Anderson King, in which W. O. Diffie filed a plea of intervention, asking affirmative relief against plaintiffs, and making P. D. Wilson a party defendant, and in which Wilson filed an answer and cross-bill. Judgment for defendants, and for the cross-complainant, and the intervener appeals. Reformed and affirmed.

Chambers & Black, of Clarksville, for appellant. S. W. Harmon, Kennedy & Robbins, and Lennox & Lennox, all of Clarksville, and Wright & Patrick, of Paris, for appellees.

HODGES, J. In September, 1913, J. A. White and Dero Austin instituted this suit in the district court of Red River county, against the unknown heirs of Anderson King, Jr., and William Gregg, in the form of an action of trespass to try title and to about 400 acres of land described as a part of the Robert Hill survey situated in Red River county. Before a trial White died, and his widow and children were substituted as parties plaintiff. Some of the heirs of Anderson King answered. In November, 1913, the appellant, W. O. Diffie, filed a plea of intervention, setting up a claim of title to about 200 acres of the land described in the plaintiffs' petition, and asked for affirmative relief. P. D. Wilson, one of the appellees, who was made a party defendant, thereafter filed an answer and a cross-bill, in which he set up title in himself to that portion claimed by Diffie. The controversy was finally narrowed to one between Diffie and Wilson, as to which had the title to the 200 acres they both claimed.

The Robert Hill survey was patented to Benjamin Gooch, assignee of Robert Hill, September 24, 1853. The patent recited that the original certificate was transferred to

Gooch February 7, 1840. According to the field notes, the Hill survey contained 836 acres, and was in the shape of a square whose sides were 2,173 varas long. On May 26, 1841, Gooch conveyed by bond for title 231 acres lying in the northwest corner of the Hill survey to Josiah Davidson. On February 3, 1842, he conveyed to James M. Sharp, in the same manner, 202 acres lying in the southwest corner, and connecting with the Davidson tract. The following diagram will show the Hill survey and the subdivisions existing after the sales made to Davidson and Sharp, and also the land involved in this suit:

[1-3] The appellee Wilson claims title under a deed from Benjamin Gooch to the heirs of Anderson King, assignee of William Gregg, dated December 3, 1854. This deed appears to have been executed in compliance with a bond for title given by Gooch to William Gregg on November 10, 1843, which recited a cash consideration. The appellant, Diffie, claims under a grant from Gooch to Wm. C. Young. The record shows that on January 29, 1846, Gooch executed a bond for title to Young for 200 acres of land in the Hill survey, lying south of the Davidson tract and east of the Sharp land. On December 5, 1854, Gooch executed a deed to Wm. C. Young, in which the number of acres was omitted, but which in other respects contained the same description embraced in the bond for title. When the appellee Wilson offered in evidence the deed from Gooch to the heirs of Anderson King, it was objected to by the appellant, Diffie, on the ground that it was void because of a defective description. The objection was overruled, and the deed was read in evidence. The following is the description objected to:

"Five hundred and eighty acres of land situated in the county of Red River, State of Texas, on Pecan bayou on the waters of Red river,

being a portion of the Robert Hill survey of land and a part of the James Basham survey, to wit: Four hundred and twenty acres out of the northeast portion of the Robert Hill survey, and one hundred and sixty acres out of the east half of the James Basham survey of three hundred and twenty acres adjoining on the southeast the Robert Hill survey, and more particularly described by the records of the register's office in Clarksville."

That part of the above description which refers to the 160 acres out of the Basham survey is not material in this controversy. It is contended that the language "four hundred and twenty acres out of the northeast portion of the Robert Hill survey" is too indefinite and uncertain to enable a surveyor to locate land. The uncertainty of this description, if there is any, appears upon the face of the grant itself, and extraneous evidence is not admissible to supply what is lacking. The general rule is that a deed conveying real estate will not be treated as void for want of a sufficient description of the land conveyed unless the description is so defective that the land cannot be located by an inspection of the deed and a resort to those muniments or evidences to which it refers expressly or by implication. 2 Devlin on Deeds, p. 1917. Here the deed expressly refers to the land as a part of the Robert Hill survey, and thus makes it proper to resort to the field notes of that survey for the purpose of ascertaining its location, its form and the number of acres it contains. Brown v. Chambers, 63 Tex. 131.

[4] Upon examination of the patent we find that the Hill survey contained 836 acres, and is in the form of a square, with all of its boundary lines 2,173 varas long and running toward the four cardinal points of the compass. The deed under consideration conveys 420 acres to be taken out of the northeast portion of that survey. We think the word "portion," as there used, may be treated as synonymous with "part," without making any material variation in the meaning intended to be conveyed by the grantor. The description would then read: "Four hundred and twenty acres out of the northeast part of the Robert Hill survey." The northeast part of a survey which has the form of a square is that portion lying between the north and the east boundary lines. Where the number of acres to be taken from that part of the original survey is equal to or exceeds the quantity of land contained in its northeast quarter when subdivided into four equal parts, there is no difficulty in saying that the parties to the conveyance intended to include at least all of the land in the northeast quarter. This would fix the northeast corner of the original survey as the northeast corner of the land conveyed, and thus definitely establish a starting point from which to construct the new survey.

Descriptions similar to that here under consideration have been held sufficient by the courts in other states. Smith v. Nelson, 110 Mo. 552, 19 S. W. 734; Goodbar v. Dunn, 61 Miss. 618; Enochs v. Miller, 60 Miss. 19; Bowers v. Chambers, 53 Miss. 259. In the last case cited the following description was held to be good: "Fourteen acres off N. E. corner E. half S. E. quarter section 20," etc., and "thirteen acres off N. end W. half S. W. quarter N. of road, section 21," etc. In discussing the sufficiency of the description the court said:

"It is easy to lay 13 acres off of the end of an eighth of a section, and 14 acres off of the northeast quarter of an eighth."

In Goodbar v. Dunn this description was held to be good: "Two hundred and twenty-two and a half acres off the south and west part of the south half of section 24." The court, in discussing its sufficiency, said:

"By this description is conveyed 222½ acres to be laid off in a strip of equal depth on the southern and western boundaries of the half section, which lines are by the description made the base lines for the survey."

In Enochs v. Miller this description was held sufficient:

"One hundred and seven acres in the south part of southeast quarter of section 22, township 3, range 2 west."

In support of its holding the court referred to Bowers v. Chambers, supra, and McCready v. Lansdale, 58 Miss. 879. In Smith v. Nelson this description was held sufficient:

"One acre, being the southeast corner of the northeast fourth of the southeast quarter of section 2, township 43, range 24, Henry county, Missouri."

In passing upon the question the Supreme Court of Missouri quoted approvingly the following language from an Ohio decision:

"That corner is a base point, from which two sides of the land conveyed shall extend an equal distance, so as to include by parallel lines the quantity conveyed. From this point the section lines extend north and east so as to fix the boundary west and south. The east and north boundaries only are to be established by construction, and the rule referred to gives them with sufficient certainty."

Applying the rule referred to in the above quotation, we have the northeast corner as a definitely fixed point where a survey might begin, with the north and the east boundary lines definitely determined. It remains, then, to locate the other two lines. With a starting point of this character the law will construct a survey in the form of a square sufficiently large to embrace the number of acres called for; there being no natural or artificial objects mentioned which would limit the size of the square to a smaller figure. Hence we conclude that the deed was not subject to the objections urged.

The next question then is, Did the court err in holding that this deed conveyed all of the unsold portion of the Hill survey; that is, all of the land which had not been previously conveyed to Davidson and Sharp? The court filed the following as a part of his conclusions of law:

"The deed from Benjamin Gooch to the heirs of Anderson King conveyed the remainder of

the Robert Hill survey, deducting the Josiah Davidson and J. M. Sharp tracts; and under said deed the land was located and generally recognized as covering and including all of the land in the Robert Hill survey south and east of the J. M. Sharp tract."

[5] While there are no specific expressions in the court's finding to that effect, he must have concluded that the deed from Gooch, under which Wilson claimed, when applied to the land, presented a situation which made it proper to hear and consider extrinsic evidence in order to determine just where the parties intended the south and west boundary lines to run. Extrinsic evidence was admitted, over the appellant's objection, and formed the basis of the court's conclusion above quoted. That evidence consisted of facts tending to show that at the time Gooch made the conveyance to the heirs of Anderson King, he had previously conveyed to Davidson and Sharp all of the Hill survey except 403 acres which lay principally in the southeastern portion of the survey. There was also evidence tending to show that subsequent purchasers holding under this conveyance from Gooch paid the taxes on and cut timber from all that part of the land. The action of the court in admitting and considering this evidence is defended by the appellees with the proposition that, while the deed was free from any patent ambiguity which would destroy its efficacy, a latent ambiguity was disclosed when the description it contained was applied to the ground.

"The office of description in a deed or other writing is not to identify the land, but to furnish means of identification." Holley v. Curry, 58 W. Va. 70, 51 S. E. 135, 112 Am. St. Rep. 944, and cases there cited.

[6] A latent ambiguity arises when the deed expresses more than one method for identifying the lines or corners of the grant, and which do not harmonize when applied to the ground, or when the description is of such a character that it may, without contradicting or ignoring its terms, be applied to more than one tract of land. No latent ambiguity arises from the mere fact that the calls in the description conflict with some prior conveyance not referred to or in any manner made a part of the instrument to be construed.

[7, 8] We must gather the intention of the grantor from the language used; and, where there is no conflict in the terms of the description, and that description fits one tract of land and no other, there is no latent ambiguity and no occasion for the admission of extrinsic evidence to explain the intentions of the grantor. Jamison v. N. Y. & T. L. Co., 77 S. W. 969; Thompson v. Langdon, 87 Tex. 254, 28 S. W. 934; Johnson v. Archibald, 78 Tex. 96, 14 S. W. 266, 22 Am. St. Rep. 27; Converse v. Langshaw, 81 Tex. 277, 16 S. W. 1031. In Thompson v. Langdon, referred to above, Justice Gaines, of our Supreme Court, said:

"The lines of a grant must be established by the calls in its field notes. If those calls are inconsistent, then certain rules of construction and mere parol evidence may be resorted to in order to resolve the doubt and to establish the line which was actually run by the surveyor. It is but a case of a latent ambiguity in a written instrument. A writing unambiguous upon its face may become doubtful when applied to the subject-matter of the description. On the other hand, if there be no conflict in the calls found in the field notes of a survey, there is no room for construction, and the calls must speak for themselves. To permit the introduction of parol evidence to vary the calls would be to violate the familiar rule that extraneous evidence is not permissible to vary a written instrument."

In Johnson v. Archibald, supra, the same judge said:

"If the calls in a grant when applied to the land correspond with each other, parol evidence is not admissible to vary them by showing that in point of fact they are not the calls of the survey as actually made. But if when so applied they disclose a latent ambiguity—that is to say, if they conflict with each other—then extrinsic evidence may be resorted to in order to determine the conflict and to show the land actually intended to be embraced by the calls of the survey."

[9] There is in the description before us, but one fixed point from which to begin a survey—the northeast corner of the Hill survey. If the description contained in the deed had expressly provided this as a beginning point and had called for lines running west, south, east, and north, of equal length, that description, when applied to the ground, could have disclosed no latent ambiguity. The only means given for locating the south and west lines are course and distance. With such a description as that, extrinsic evidence would not have been admissible to show that the lines intended to be established were at a different place from that where course and distance would locate them. Such evidence would violate the rule announced in the cases last cited. The only ground upon which the sufficiency of a description like that here under consideration can be sustained is the conclusive inference that the parties intended that the land described should be bound on all sides by lines of equal length and parallel with those referred to in the deed. If this inference is not to be treated as conclusive, we should have different deeds with precisely the same field notes, except as to the particular corner where the start was to be made, describing lands lying in wholly different forms. What the law supplies in a written instrument is to be treated with as much sanctity as that which the parties have themselves put there. The description in this instance, to be held sufficient, must be regarded as forming a square, with all sides running toward the four cardinal points of the compass and conforming to the north and east boundary lines of the Hill survey. The distance south and west to which the calls should be extended is a mere matter of mathematical calculation. A square block containing 420 acres would be bounded by four sides 1,539.8 varas long.

[10] With that construction of the deed, it

appears that Gooch conveyed to the heirs of Anderson King only a part of the land involved in this controversy between Diffie and Wilson. It follows that Diffie has no title to the land claimed by him, and which lies within the limits above referred to. The three-year statute of limitation is not available, because the evidence conclusively shows that this portion had been disposed of by Gooch prior to the execution of the bond for title to Young, under whom Diffie claims. Dixon v. Cruse, 127 S. W. 591; Saxton v. Corbett, 122 S. W. 75; Eliot v. Whitaker, 30 Tex. 411; Allen v. Root, 39 Tex. 589. There is no evidence in the record of any lack of notice on the part of those under whom Diffie claims that would change the rule announced in the cases above cited.

We therefore conclude that the court erred in rendering judgment in Wilson's favor for all 'of the land in controversy, and in refusing to enter judgment in favor of the appellant, Diffie, for that portion of the Hill survey claimed by him and which lies outside of that included in the Gooch deed to King. The judgment of the trial court will therefore be reformed and here rendered in accordance with these conclusions; that is, that Wilson recover that portion of the land in controversy included within the limits of a square sufficiently large to contain 420 acres, constructed with the northeast corner of the Hill survey as the starting point, and that Diffie recover all that portion of the land in controversy lying south of the land herein awarded · to Wilson, together with costs of this appeal.

### On Motion to Reform Judgment.

The appellant, Diffie, has filed a motion to reform the judgment rendered in this case, so as to award him a recovery of all the land lying south of the south boundary line of the square containing 420 acres as outlined in the original opinion, and extending east to the east boundary line of the Hill survey.

[11] In view of the peculiar character of some of the pleadings in this case, we have had some difficulty in determining just what the form of the judgment to be rendered here should be. The amended original petition of White and Austin, the original plaintiffs, was in part in the form of an action of trespass to try title. ·A part of the land which they described as theirs is included in that claimed by Diffie under his deed. After pleading in the form of an action of trespass to try title, the plaintiffs White and Austin set out other facts at considerable length. They allege that they purchased the land described by them from W. T. Norris in consideration of a stated cash payment and the execution of certain vendor's lien notes, and that Norris had executed to them a deed containing a general warranty of the title. They further allege that after their purchase, and upon in-

quiry into the true status of the title, they· found that it was clouded by reason of the adverse claims of the unknown heirs of Anderson King, and unknown heirs · of William Gregg, and other parties defendant. After referring to the various answers theretofore filed to former amendments of their original petition, they continue as follows:

"That plaintiffs' title to the entire premises is threatened by adverse claims set out in answers of all the defendants herein named, and plaintiffs believe and allege that the titles set up and claimed by said defendants are paramount to the title of the plaintiffs, and that plaintiffs will be dispossessed and evicted from said premises."

Under further averments in the petition a judgment is sought against Norris on his warranty, and a cancellation of the notes executed by White and Austin in consideration of the purchase of the land.

It appears from the language quoted above that these plaintiffs have conceded that their title, to the extent of the conflicts presented in the answers of the parties named as defendants, which includes both Wilson and Diffie, has failed. This, in effect, appears to be an admission that they have not title to that part of the land described in their petition. Whether they intended this to have all the legal effect of an admission of no title may be doubted, in view of the averments first appearing in their amended original petition. But in any event, when we go to the proof we find that the plaintiffs White and Austin have failed to establish a title to that part of the land described as theirs which lies south of 'the south boundary line of the square block containing 420 acres and constructed in accordance with the rule announced in the original opinion. The appellant, Diffie, in his pleadings asked no affirmative relief, but merely resists the claim of Wilson and of White and Austin to the extent of the conflicts in their respective claims. We have therefore concluded that, as between White and Austin and Wilson and Diffie, the proper judgment to be rendered is that White and Austin and Wilson take nothing by their suits against Diffie as to that portion of the Hill survey described in their pleadings which lies south of the following described line: Beginning at a point on the east boundary line of the Hill survey 1,539.8 varas south of its northeast corner and running thence west parallel with the north boundary line of the Hill survey 1,539.8 varas. That is the effect of the judgment heretofore rendered by this court against Wilson, and of which he has made no complaint. The judgment will therefore be reformed so as to deny any recovery to White and Austin of the lands lying south of the line above referred to.

[12] To the extent of the land lost to White and Austin by this reformation of ·the judgment the warranty of Norris has failed, and under proper pleadings and proof he might be made to respond for breach to that extent. Norris is a party to this suit, and has

filed an answer which does not deny the existence of his warranty and the payment of the consideration set out in the plaintiffs' petition. But there is before us no proof of the exact amount of the land that will be lost, and we are therefore unable to accurately determine the amount of recovery that should be awarded for the breach of the warranty. As between Norris and the original plaintiffs, White and Austin, the case will be remanded to enable these parties to try the issue of damages resulting from a breach of the warranty. While the testimony shows the consideration paid, it does not show the exact number of acres which the plaintiffs will lose to Diffie, and we deem this the best method of disposing of that controversy, which is a separable one. In all other respects not inconsistent with the judgment as reformed, the judgment of the trial court is affirmed.

---

☞For other cases see same topic and KEY-NUMBER in all Key-Numbered Digests and Indexes
*Application for writ of error pending in Supreme Court.