R. M. THOMPSON v. W. R. LANGDON ET AL.

No. 196.

1. Calls in Grant—Surveys.

The lines of a grant must be established by the calls in its field notes. If these calls are inconsistent, then certain rules of construction, and even parol evidence, may be resorted to in order to resolve the doubt and to establish the line actually run by the surveyor...........................  258

2. Same—Same.

On the other hand, if there be no conflict in the calls found in the field notes of a survey, there is no room for construction, and the calls must speak for themselves  ..................................................................  259

3. Same—Other Surveys.

It is not proper to resort to the calls in the field notes of another survey, although made at the same time and by same surveyor, to create a conflict in case none arises from the calls of the survey in question when applied to the objects called for or actually found upon the ground.................  259

4. Case in Judgment.

Two surveys fronting on a stream were made about the same time by the same surveyor.  Survey 104 began at the stream at a point well known.  The calls were, thence east, thence south 1344 varas; thence west to the stream, thence with stream to beginning.  Survey number 105 called to begin at southwest corner of 104; thence east, thence south, thence west to corner on stream.  This corner is known.  The sum of the east lines is in excess of the distances called:  *Held*, that survey number 104 is not affected by such excess,  259

5. Sale of Land Certificate After its Location.

A sale of a land certificate after its location operates the equitable transfer of the land located under it.   Lewis v. Jordan, 68 Texas, 448  .............  259

ERROR to Court of Civil Appeals for Second District, in an appeal from Taylor County.

The errors complained of in the petition for writ of error were: 1. Error in the trial court and Court of Civil Appeals in holding that a transfer of the land certificate under which the land was surveyed after its survey did not convey the land.  2. In holding that the vacancy on which the location by plaintiff was made did not exceed 640 acres, and was therefore void; and that the junior purchase from the State, under what is commonly called the scrap act, by vendor of defendant was valid.  Whether the vacancy exceeded 640 acres and was subject to location by plaintiff depended upon the locality of the south line of survey number 104; and this involved the question of the construction of the calls of the survey, and whether affected by excess of river front raised when the field notes of number 105 adjoining were considered.

The facts are given in the opinion.

*N. A. Rector* and *J. K. Rector*, for plaintiff in error.—The court erred in sustaining the exception of the defendant to the transfer of William

Shaphard to the plaintiff of the certificate by virtue of which the land in controversy was located (the exception being that the proof showed that the said certificate had already been located prior to the said transfer, that the said certificate had merged in the land and was functus officio, and a transfer of same did not operate to transfer to plaintiff the land sued for); because: (1) no patent had issued on said location; (2) the transfer of said certificate also by express terms conveyed all the "rights, privileges, and hereditaments," etc., belonging to said certificate; (3) a transfer of a located certificate operates as a transfer of the land located by virtue thereof. Simpson v. Chapman, 45 Texas, 566; Hearne v. Gillett, 62 Texas, 25; East v. Dugan, 79 Texas, 329; Harlowe v. Hudgins, 84 Texas, 107.

Where the beginning corner of a survey is found on the ground, and all its lines and other corners are unmarked and can not be found, and where none of the calls in said survey are for adjacent surveys, said survey must be established on the ground by beginning at said only known corner and running it out by its patented field notes, where there is no conflict with older surveys. Williamson v. Simpson, 16 Texas, 440.

*Cockrell, Cockrell & Tillett,* for defendants in error.—1. The transfer of a land certificate as such, after the certificate has been located and returned, is not sufficient as a conveyance of the land located by virtue thereof.

2. The Vaughan survey number 104, and the Jett survey number 105, having been located by the same surveyor at the same time, and the only corners established on the ground being corner A, the northwest corner survey number 104, and corner J, the southwest corner of survey number 105, all other corners had to be established from course and distance alone, there being no evidence of a survey on the ground. The north line of survey number 104 was established properly by running the proper course 5746 varas, the distance called for in the field notes, and thus establishing corner B as called for in the patent. In the same manner the south line of survey number 105 should have been established by beginning at the only known corner, J, and running the proper course 2888 varas, an extension of the lines J and I, the two extreme lines. The north and south sides being thus established, other corners would be properly established by running from corner B south 1344 varas, then back to the river, following proper course, and thence down the river to the place of beginning. Likewise to establish number 105, begin at corner I (though presently it will be seen that I is not properly located) and run 672 varas north; thence back to the river, and thence down the river to the place of beginning. It would thus be found that there is a distance of 150 varas between the north line of survey number 105 and the south line of sur-

vey number 104, which lines ought to be identical. The court therefore properly constructed the surveys by extending the east lines of both a distance proportioned to their respective widths. Wilder v. Carroll, 29 Texas, 318; Philips v. Ayers, 45 Texas, 602.

GAINES, CHIEF JUSTICE.—This was an action of trespass to try title brought by the plaintiff in error against defendants in error. The trial court gave judgment for the defendants, and upon appeal that judgment was affirmed by the Court of Civil Appeals. To reverse the judgment of affirmance this writ of error is prosecuted.

On the 23rd day of March, 1881, one William Shaphard, being the holder of a valid land certificate for 640 acres, located it upon the land in controversy, and in due time caused the premises to be surveyed and the certificate and field notes to be returned to the General Land Office. He subsequently, by an instrument duly executed and acknowledged, conveyed the certificate to the plaintiff in error.

On November 15, 1881, one D. B. Corley applied to the surveyor of the county to purchase the land under the Act of July 14, 1879, as amended by the Act of March 11, 1881. His application and field notes were duly recorded and returned to the General Land Office, and the survey was patented to defendant Langdon, as his assignee.

The Act of July 14, 1879, withdrew all bodies of the unappropriated public domain in the organized counties of the State, which consisted of 640 acres or less, from location, and provided for their sale. Corley's application to purchase was made upon the theory that the unappropriated land upon which Shaphard had filed his certificate consisted of less than 640 acres, and that therefore the location was void and the land was subject to purchase under the provisions of the Act of 1879 and the Act of 1881, amendatory thereof.

The land in controversy is shown upon the following map, and is bounded on the north by survey number 103, on the east by the lunatic asylum lands, on the south by survey number 48, and on the west by surveys numbers 105, 106, and 107.

The heavy lines show the land as claimed by plaintiff.   The dotted line shows the south boundary of No. 104 as claimed by defendants.

The field notes of survey number 104 are as follows: "Beginning at corner A., on the river, which is southwest corner of number 103; thence east 5746 varas, stake and mound; thence south 1344 varas, stake and mound; thence west 5006 varas, stake from which a willow 6 inches in diameter bears north 68½ west 10 varas, a willow 7 inches in diameter bears north 79 west 10 varas; thence down the river with its meanders to the place of beginning, containing 1280 acres."

The field notes of number 105 are as follows: "Beginning at a stake set for upper corner of number 104, from which a willow 6 inches in diameter bears north 68½ west 10 varas, a willow 7 inches in diameter bears north 79 west 10 varas; thence east 2488 varas to a stake and mound; thence south 672 varas to a stake and mound; thence west 2888 varas to a stake from which a mesquite 6 inches in diameter bears south 26 east 60 varas, a mesquite 3 inches in diameter bears south 17½ east 80 varas; thence down the river with its meanders to the place of beginning, containing 320 acres."

It appears by the findings of the trial court, which were approved by the Court of Civil Appeals, that of the corners and lines called for in the field notes of the two surveys, only the northwest corner of number 104 and the southwest corner of number 105 (marked A and J, respectively) could be found upon the ground. The distance between the north line of number 104 and the south line of number 105 as established by these corners is from 2166 to 2185 varas. According to the field notes, the distance should be 2016 varas. There is, therefore, an excess in the width of one or of the other of the two surveys, or of both together, of 150 varas, at least.

Upon these facts the trial judge concluded, that the excess should be apportioned between the two surveys, and that in consequence the south line of number 104 should be established 100 varas further south than the distance called for in its field notes. The result of this conclusion was to reduce the area of the vacant land located by Shaphard to less than 640 acres, and to render that location void, by reason of the fact that it had been withdrawn from such appropriation by the statutes above cited. Judgment was accordingly rendered for the defendant below, the defendant in error in this court. The ruling of the trial court was sustained by the Court of Civil Appeals, and the judgment was affirmed. This we think was error.

The lines of a grant must be established by the calls in the field notes. If these calls are inconsistent, then certain rules of construction and even parol evidence may be resorted to in order to resolve the doubt and to establish the line which was actually run by the surveyor. It is but a case of a latent ambiguity in a written instrument. A writing, unambiguous upon its face, may become doubtful when applied to the subject matter of the description. On the other hand, if there be no conflict in the calls found in the field notes of a survey,

there is no room for construction, and the calls must speak for themselves. To permit the introduction of parol evidence to vary the calls would be to violate the familiar rule, that extraneous evidence is not permissible to vary a written instrument. Such is the case before us. None of the objects called for in the field notes of survey number 104, for the purpose of identifying its corners, were found upon the ground, except those used to designate the place of beginning. If the north boundary line or the northwest corner of number 105 had been called for, then parol evidence would have been admissible in order to show where that line was actually run, and in case of a conflict the call for distance would have been controlled by the establishment of such line. The field notes of survey number 105 call to begin at the southwest corner of number 104, and show that it was the intention of the surveyor to leave no vacant land between the two surveys. It suggests that the surveyor made a mistake in his call for the length of the east line of number 104, or of the corresponding line of number 105, or in both of these lines. But we apprehend that it is not proper to resort to the calls in the field notes of another survey, although made at the same time and by the same surveyor, to create a conflict in case none arises from the calls of the survey in question when applied to the objects called for as actually found on the ground. Survey number 104 can be established by course and distance from its beginning corner, without disregarding any call contained in them, and in our opinion it should be so established. It was agreed by the parties to the suit, that if the south line of the survey be fixed by the length of the east line as called for in the field notes, there were more than 640 acres of vacant land in the tract filed upon by Shaphard. It follows, therefore, that his location was valid and that defendants' vendor acquired no title by his purchase. We find nothing in Welder v. Carroll, 29 Texas, 318, inconsistent with the views expressed in this opinion.

This makes it necessary that we should determine a question raised in the trial court, but passed upon neither in that court nor in the Court of Civil Appeals. In order to show title to the land sued for, the plaintiff introduced in evidence a conveyance by Shaphard to him of the certificate executed after it had been located upon the land. It is contended that the sale of the certificate did not pass title to the land. But it is held in Lewis v. Johnson, 68 Texas, 448, that "the sale of a certificate after location operates the equitable transfer of the land located under it." This ruling is in accordance with the previous intimations of the court, and we do not doubt its correctness. Simpson v. Chapman, 45 Texas, 566; Hearne v. Gillett, 62 Texas, 25. We have held, that a sale by an administrator of a certificate after it has been located will not pass the title to the land; but that ruling rests upon a different principle. East v. Dugan, 79 Texas, 329.

There being no controversy about the facts of this case, the judgment is reversed and here rendered for the plaintiff in error for the land in controversy, and for all costs.

*Reversed and rendered.*

Delivered October 24, 1894.