KEEFER et al. v. JAMISON et al.
(No. 7419.)

(Court of Civil Appeals of Texas. Galveston. Oct. 26, 1917. On Motion for Rehearing, Nov. 9, 1917. Second Motion for Rehearing Denied Dec. 6, 1917.)

BOUNDARIES ⬅⟹24 — SUCCESSIVE DEEDS BY SAME GRANTOR.

There being no evidence that the stakes of the surveyor called for in a deed were located otherwise than as called for therein, the plain and unambiguous and nonconflicting call of the deed for a boundary from a certain point "north" a certain distance to the S. line cannot be considered north 20 degrees east, to correspond to the boundary of another tract, a corner of which was the starting point, where by such course the boundary would not reach the S. line in the distance called for, merely because subsequently the grantor made a deed to another conflicting with the first if said boundary ran north.

Error from District Court, Harris County; C. E. Ashe, Judge.

Action by N. D. Jamison and others against J. B. Keefer and others. Judgment for plaintiffs, and certain defendants bring error. Reversed, rendered in part, and in part remanded.

E. P. & Otis K. Hamblen, of Houston, for plaintiffs in error. Love & Fouts, of Houston, for defendants in error.

GRAVES, J. Defendant in error Jamison filed this suit against plaintiffs in error for a tract of land out of the John Austin two-league grant in Harris county, Tex., more particularly described as follows: Beginning on the northwest bank of Little White Oak bayou at the southwest corner of a tract of 20 acres occupied in 1853 by one Irving, and afterwards, on December 9, 1853, conveyed by J. T. Crawford to Deiderich Germer by deed recorded in Book P, page 374, of the deed records of Harris county; thence northwardly with the west line of said Irving and Germer tracts, 1225 feet to the northwest corner on the north line of the Scott 500-acre tract, of which the land herein sued for is a part; thence west with Scott's line 326 feet to the northeast corner of a 10-acre tract of land decreed to Frederick Lohff by the district court of Harris county in the case of Fredericka Lohff v. Deiderich Germer and Minna Samow on April 8, 1874, recorded in Book P, page 578, of the minutes of the district court of Harris county, Tex.; thence *southwardly* with the east line of said 10-acre tract to Little White Oak bayou; then down Little White Oak bayou with its meanders to the place of beginning, containing 8.6 acres, referring to the chain of title under which he held.

The petition was in the nature of a trespass to try title, and the plaintiff therein, defendant in error here, claimed the land as thus described by him, not only under his rec-ord title, but under the statutes of limitation of 5 and 10 years, and also asserted title acquired under an agreed boundary line, and by estoppel as against the defendants, plaintiffs in error here. In that connection he alleged that he acquired the property from and under Deiderich Germer, who acquired the title from John F. Crawford, and that the property in controversy and the tract of land immediately east of it, now owned by the plaintiffs in error, passed into and was owned by Wilhelmina Schroeder and her husband, under whom both litigants claimed title; that the plaintiffs in error and those under whom they claimed went into possession of the tract of land so acquired from the said Wilhemina Schroeder *and located immediately east of and adjoining the land in controversy,* and that defendant in error and those under whom he claimed went into possession of the land in controversy, and the division line between these two tracts of land was fixed and established by the common grantors of such tracts and by their respective vendees thereof, and that the plaintiffs in error and those under whom they claimed made an agreement as to, and for many years maintained, a fence marking the division line between these respective tracts of land, *which division line corresponded with the east line of the tract of land sued for,* and was for many years recognized and acquiesced in as such; that the defendant in error and those under whom he held purchased the land in controversy and paid value therefor, relying upon the acts and conduct of plaintiffs in error, and those under whom they claimed, in so recognizing and maintaining such division line, and without any knowledge of any claim by them to any land west of such recognized division line, by reason of which they were at that late date precluded from disputing the location of defendant in error's east line, or claiming the land in controversy, or any part thereof, as against him.

Plaintiffs in error answered by plea of not guilty, stating that Modra and wife were the owners of the land set out in their answer, and that Keefer was their tenant. They set out and described their land as: Beginning on White Oak bayou *at the southwest corner* of what was known as the Stern tract of land (formerly *Blackwell tract of land*); thence running north 80 rods to what is *known as Scott's north boundary line* to a stake for corner; thence west along the north boundary line of the Scott tract 40 rods to a stake for corner (calling for bearing trees); thence south calling for bearing trees along its line 394.2 varas to a point in White Oak bayou (calling for bearing trees); thence down the center of White Oak bayou to the beginning, containing 20 acres of land more or less, it being the same tract of land conveyed by Henry Schroeder and wife to John Kuhnle

on June 11, 1883. They disclaimed as to any land sued for by defendant in error not included in this description. They also pleaded the statutes of limitation of 3, 5, and 10 years. They denied that they, or those under whom they claimed, ever had any understanding or agreement with the defendant in error, or those under whom he claimed, as to the dividing line between the property as so described by them and the land west of that tract, or that they or those under whom they claimed ever constructed any fence or improvements upon what defendant in error claimed to be their west line, or that they ever recognized or acquiesced in his claim to any portion of this land described in the deed so made to them, or that he or those under whom he claimed ever used, occupied, or had possession of any of it.

The cause was submitted to a jury on special issues, and upon the return of a verdict thereon favorable to defendant in error Jamison, judgment was entered in his favor for the land sued for against the plaintiffs in error, who, by writ of error duly sued out, have brought the case to this court for review.

As already indicated from the pleadings, both parties claimed the land from and under Wilhelmina Schroeder and husband, Henry Schroeder. The title of plaintiffs in error came out of Schroeder and wife by the above-mentioned deed they made to John Kuhnle on June 11, 1883, and thence on down into them by mesne conveyances under the same description contained in that deed and as given in their pleadings. While on the other hand, the title of defendant in error emanated from Schroeder and wife through a power of attorney given by them to H. B. Cline on September 6, 1893, and a deed executed by them and H. B. Cline together to the latter's wife, Edna E. Cline, on April 12, 1894. The power of attorney authorized Cline "to recover that tract of land situated on Little White Oak bayou in Harris county, Tex., being all that part of a tract of 12 acres more or less described in deed from Deiderich Germer to Minna Samow, now the wife of Henry Schroeder, made January 4, 1867, and recorded in Harris County Records of Deeds, vol. 4, p. 182, *less 10 acres off of the west end or side decreed to Fredericka Lohff* on May 8, 1874."

The deed to Mrs. Cline conveyed all "that certain 8.6 acres out of the north part of the Scott 500 acres, which is a part of the northeast quarter of two leagues originally granted to John Austin, situated on the north side of Little White Oak bayou about 2½ miles northwardly from the courthouse. For a more particular description the field notes of the survey made by J. J. Gillespie is hereto attached and made a part of this instrument. Reference is also made to volume 4, p. 182, and volume 70, pp. 41 and 42, of the Harris County Records."

The field notes referred to as made by Gillespie carried practically the same description of the land as that set out at the beginning hereof from the petition in this suit, except that the 20 acres, along the western line of which it was called to run, was referred to in Gillespie's notes as the Samow 20 acres, and the course of its western line was given as *north 20° E.*, whereas in the petition this 20 acres was called "the Irving and Germer tracts," and the course of its western line stated simply as "northwardly." But whether called by the one or the other name, we think it sufficiently appears from the pleadings and chains of title of the parties that the Irving or the Germer, or the Samow 20 acres, was one and the same tract of land; that much being, as we think, conceded in the manner indicated by both parties, the whole case turned upon the proper location upon the ground of this 20 acres, particularly of its eastern and western boundary lines. As has been previously indicated in the italicized parts of the respective descriptions given by defendant in error of the land he sued for, and by plaintiffs in error of the specific tract they alone claimed, it is apparent that the former's contention is that this 20-acre tract conformed to Blackwell's west line, and that consequently its east and west lines had a variation of 20 degrees from the north and south, instead of running due north and south; while, upon the other hand, the latter's position is that, since the deeds under which they held called for the 20 acres to begin at Blackwell's southwest corner, a well ascertained and undisputed corner, and thence to run *not with Blackwell's west line*, but *due north* 80 rods to Scott's north line, thence west with Scott's line 40 rods, thence *due south* to the bayou, thence down and with the bayou to the beginning, and since this description was unambiguous and contained no calls from which the jury could find that the land was located in any other position than just as called for, it should be given that location, and its east and west lines allowed to run due north and south, especially when the evidence showed that, if applied to the ground, the location as claimed by them conformed to and exactly fit these calls and lines in their deeds. To state concretely the effect of these differing contentions as to the proper location of the 20 acres in question: If its east and west lines are given the 20 degrees variation, and its east line made to conform to and follow Blackwell's west line, as contended for by defendant in error Jamison, a triangular piece of land constituting that sued for by him would be left immediately adjoining it on the west and lying between it and the Lohff 10 acres; whereas, if its east and west lines are made to run with the compass due north and south, using only Blackwell's southwest corner as the starting point, precisely as called for in plaintiffs in error's deeds, only a small strip of about 2 acres inclosed within parallel.

lines would be left on its west side between it and the Lohff 10 acres, while a triangular tract of some 7 acres would be left on its east side between it and Blackwell's 20 acres.

In aid of a better understanding of these two contentions and of their effects applied to the ground, we append the following map presented with the record here, to wit:

Back of Wilhelmina and Henry Schroeder also there was a common claim of title by the litigants to the land sued for, both asserting that they acquired the property from and under Deiderich Germer, who in turn had acquired it from John F. Crawford.

It was admitted between them that, prior to 1852, John F. Crawford had title to all the land shown on the map lying between the east line of the Blackwell 20 acres, the north line of the Scott 500 acres, and White Oak bayou, comprising about 39 acres. It was then shown that he made three sales and conveyances out of the land thus inclosed, one to Blackwell, and two to Deiderich Germer. In his sale to Blackwell, made in 1852, the west line of the Blackwell, by reversing the call, ran from White Oak bayou north 20 degrees east 85 rods to the north line of the Scott 500 acres. So far as the evidence shows that line was well recognized and corresponded with the call, both as to the location and distance.

On December 9, 1853, he sold and conveyed to Germer 20 acres, beginning at Blackwell's southwest corner, running north 80 rods to a stake in the north line of the Scott 500 acres; thence west 40 rods, etc. The evidence is undisputed that this course and distance fits upon the ground in accordance with the calls, and could not be located at any other place so as to give either the course or the distance. There was no evidence whatever, circumstantial or otherwise, tending to show where the stakes were located other than as called for in the deed, nor was there any allegation of a mistake in the calls in this or in any other deed un-

der which plaintiffs in error claimed; furthermore, the description of the 20 acres, as given in this deed, is the same as in the deed from Henry Schroeder and wife to John Kuhnle, of June 11, 1883, under which plaintiffs in error claimed, as already referred to, and in every other conveyance of it offered in behalf of either party.

On December 28, 1853, Crawford made the second sale to Germer, conveying 12 acres, beginning on White Oak bayou where the north line of the Scott 500 acres intersected same; thence running east to the Irving tract; thence south to the bayou. This made a total of 32 acres he sold to Germer. It thus clearly appears, we think, from Crawford's deeds to Blackwell and to Germer, that Crawford had accurate knowledge of what land he had in there, and that the course and distance called for in the respective deeds he made not only included the number of acres he intended to convey, but, when placed on the ground, would fit the calls, thus leaving the triangle between it and the Blackwell tract; Crawford's heirs subsequent to his death conveyed this triangle, and it also finally passed down into the plaintiffs in error.

At this point it must be recalled, however, as has been hereinbefore quoted from the power of attorney from the Schroeders to H. B. Cline, that Fredericka Lohff recovered from them, or their predecessor in title, 10 acres off of the west end of this last-mentioned 12 acres conveyed to Germer, her judgment describing it as:

"Beginning at the bank of Little White Oak bayou at the crossing of said Scott line; thence east with Scott's line, it being also the south line of Beutler, to a corner at such a distance from the beginning that a line thence south to the bayou and up the bayou to the beginning would inclose 10 acres."

This left only about 2 acres out of that 12-acre Germer tract in the Schroeders, represented by the narrow strip shown on the map as lying between the Germer 20 acres on the east and the Lohff 10 acres on the west, and as to which alone the power of attorney they gave Cline could be effective. And Henry Schroeder testified upon the trial in the court below that he had so understood and intended in giving it, knowing as he then did that he only had about 2 acres of land left in there, and not 6 or more acres, as claimed and sued for by defendant in error. It is true, as already recited, that in the joint deed executed by Schroeder and wife and Cline to Cline's wife, an additional description through Gillespie's notes was given, calling for 8.6 acres, but as to that Schroeder further testified:

"I did not know anything about Cline's putting in the deed that I and my wife and he made to his wife the field notes of Gillespie showing that there were 6 and some odd acres left in there. Cline called me up and got my wife to make the deed. I had to sign it; I did not know anything about having 6-odd acres before that; not that much, only 2 acres."

Upon the case made, substantially at least, as has been above recited and outlined, and at the close of the evidence, plaintiffs in error filed in the trial court their motion for an instructed verdict in substance as follows:

"Now come the defendants and move the court to give a peremptory instruction to the jury to find for the defendants, and say there is no ambiguity in the description contained in the deed from Schroeder and wife to John Kuhnle, or in any of the deeds thereunder of these defendants. The undisputed evidence shows that the Blackwell southwest corner on the bayou is well ascertained; that the call in the deed to Kuhnle is to run north 80 rods to the north line of the Scott 500 acres, thence west 40 rods, and thence south to the bayou and down the bayou to the place of beginning; that there are no marks or monuments called for in said deed other than those above stated. The undisputed evidence shows that running the line north from the Blackwell southwest corner 80 rods reached the north line of the Scott 500-acre tract and fully complies with the call in the deed, and that to run in any other course or distance would be both against its course and distance; in other words, that the land as claimed by the defendants fits the description exactly and no other location would fit the description, and there are no calls in the deed from which the jury could find that the land was located in any other position than that claimed by the defendants, and it is the duty of the court in the absence of any ambiguity to construe said deed and instruct a verdict for the defendants; that there is no evidence to support the plaintiff's contention of estoppel on the part of defendants or those under whom they claim. The plaintiff in the case, as shown by his own evidence, at the time of his purchase made no inquiries of the defendants or those under whom they claim or of any persons living in the neighborhood as to the true line, but says that he presumed that the fence that he found was on the west line of the defendants' land as he presumed the defendants had fenced their own land, and on such presumption he purchased without making any other investigation; that all of the land lying west of said fence was open and unoccupied, including not only the land that these defendants own, but what is known as the Lohff tract, and that there could be no estoppel under the plaintiff's own evidence."

And with this motion they duly presented such a charge to the court, which is as follows, omitting formal parts:

"You are charged that the record evidence in this case shows the title to the property involved in this suit in the defendant Katherine Modra, and you will return your verdict for the defendants."

The court refused this motion and its appended charge, and that action is, for the same reasons stated in the motion, made the ground of the first assignment of error presented in this court.

After a careful review of the record, finding as we have and do that the facts set out in the motion were fully established, we think the motion should have been granted, and accordingly sustain the first assignment. We have deemed it unnecessary to detail in full the complete chains of title and other evidence presented by the parties, but only such of them as furnish an adequate basis for determination of the issues presented by this appeal.

There was no mistake charged in any of the calls of the various deeds under which plaintiffs in error claimed their 20 acres even if that kind of an issue could have been tried in this trespass to try title suit, nor was there any sort of ambiguity, conflict, or uncertainty in any of them; but upon the contrary, the evidence of Packard and Stimson, the two surveyors, was to the effect that if the calls in the deed from Schroeder to John Kuhnle were applied to the ground, it would give to the plaintiffs in error all of the land claimed by them. And such was likewise necessarily true as to the same calls in all the other deeds under which they held. In these circumstances, then, after the Schroeders had in 1883, by such certain, unambiguous, and nonconflicting descriptive calls conveyed to Kuhnle all the land they owned lying next to Fredericka Lohff's 10 acres, except about 2 acres, they could not in 1894, 11 years later, convey any part of the same land to Mrs. Cline, for the obvious reason that they had left no title to it; upon this ground alone, to say nothing of the other objections that were offered to the deed to Mrs. Cline, we think the trial court should have excluded it from the evidence.

To carry out the contention of the defendant in error that the first call in the deed of the 20 acres to Germer, and likewise in the deeds under him, should run from White Oak bayou north 20 degrees east 85 rods to Scott's line, would not only change the course of the line as called for in the deed, but would also change the distance, and would include land never intended to be conveyed according to the calls in the deeds; and that upon the bare contention that the stakes called for in the field notes as marking its corners in Scott's north line, which plainly were the stakes set by the surveyor himself at the time of and in making the survey, were in themselves artificial objects, and if they could not be found, and it could be directly or circumstantially shown that they were located otherwise than as called for (about neither of which suppositions, as has been elsewhere stated, was there a particle of evidence), then the course calls in the deed must yield to such actual location as the stakes were shown to have had; but, as just for the second time intimated, the fatal vice in this contention, even if it does not involve a far-fetched and strained construction, is that there was no evidence whatever as to what had or had not been the location of the stakes. We therefore think the plain, certain, and unambiguous calls in these deeds leave no room for the ingrafting of changes therein, but speak for themselves and must control, and that the trial court should have so held under the following authorities: Davis v. George, 136 S. W. 505; Diffie v. White, 184 S. W. 1065; White v. Kingsbury, 77 Tex. 614, 14 S. W. 201; Watts v. Howard, 77 Tex. 72, 13 S. W. 966; Powers v. Minor, 87 Tex. 86, 26 S. W. 1071; Thompson v. Langdon, 87 Tex. 254, 28 S. W. 931.

Since our conclusion that the court should have peremptorily instructed the jury to find for plaintiffs in error determines the merits of this appeal, it becomes unnecessary to pass upon questions presented in the remaining assignments; the facts having been fully developed, and it having been shown that plaintiff in error Mrs. Katherine Modra was the owner of the land claimed by herself and husband, and that J. B. Keefer was their tenant, the trial court's judgment will be reversed and judgment here rendered in favor of Mrs. Modra for the land as described in her answer.

Reversed and rendered.

### On Motion for Rehearing.

In a very earnest and able motion for rehearing filed by him, defendant in error Jamison contends that this court erred in its former opinion reversing and rendering the trial court's judgment in this cause, and in holding that an instructed verdict for plaintiffs in error for the land claimed by them should have been there returned. He specially insists that we further erred in finding that there was no evidence, circumstantial or otherwise, tending to show that the stakes called for in the deeds from Crawford and Germer conveying the 20 acres were located other than as called for in the deed. But after a most careful re-examination of the record, we are unconvinced that any error was committed in the respects complained of, and are accordingly impelled to adhere to our former conclusions.

In the sixth ground of the motion for rehearing, however, our attention is called to the fact that, as the judgment now stands, defendant in error Jamison has lost such of the land he sued for as is included in that recovered by plaintiffs in error, and at the same time has been deprived of a recovery of the purchase money therefor against Richards and wife, his warrantors, who were duly impleaded by him in the court below upon their warranty. This part of our former judgment is error. We are unable to here render judgment for Jamison against Richards and wife upon this warranty, because there are not sufficient facts in the record from which it can be accurately determined just how much of the land they so warranted to him has been lost, nor the amount paid therefor by plaintiff.

The motion for rehearing is therefore granted, our former opinion reformed; and judgment of the court below reversed and rendered for plaintiff in error Katherine Modra for the land claimed by her, and that court's judgment in favor of Marie L. H. Richards and husband, C. H. Richards, is reversed and remanded, with instructions to the trial court to hear evidence and enter its judgment in favor of defendant in error Jamison against Richards and wife for the

amount found to be due upon their warranty to him.

Granted in part, and judgment of the court below reversed and rendered in part, and in part remanded.