## HUMBLE OIL & REFINING COMPANY et al., Appellants,

v.

## T. A. CAMPBELL, Jr., et al., Appellees.

### No. 6270.

Court of Civil Appeals of Texas.

Beaumont.

June 15, 1961.

Rehearing Denied Oct. 25, 1961.

B. F. Whitworth, Jasper, John K. Meyer, Houston, Bill A. Martin, Newton, Wheat & Wheat, Woodville, Orgain, Bell & Tucker, Beaumont, Lewis Lanier, Jasper, Wayne S. Smith, Dallas, for appellants.

Wynne, McKenzie, Stroud, Jaffe & Tinsley, Dallas, Will Wilson, Atty. Gen., for appellees.

PER CURIAM.

This suit—a vacancy suit involving land in Newton County—is the culmination of proceedings begun and prosecuted under authority of Article 5421c, Vernon's Ann. Civ.Statutes.

Representing the land in question as being vacant and unsurveyed public school land, appellee Campbell applied to the Commissioner of the General Land Office for a mineral lease on it. The Commissioner refused to grant the application, having concluded, after a hearing, that the land was not vacant and unsurveyed. Appellee Campbell thereupon filed this suit in the district court of Newton County. Humble Oil & Refining Company, several other corporations, and numerous individuals were named as defendants. Also named by the plaintiff as parties to the suit were the Commissioner of the General Land Office and the Attorney General, the latter of whom intervened on behalf of the State and aligned himself with the plaintiff. The defendants answered but did not plead any affirmative defenses. Trial to a jury resulted in a judgment establishing a vacancy—bounded as claimed by the plaintiff—and fixing the respective rights of the prevailing parties therein. All defendants who claim the alleged vacant area or some interest in it, and at least one who probably does not, but who owns or claims adjacent land, appealed.

Six surveys figure in the evidence: the William H. Stark League, the William H. Stark Labor, the Lewis Dunning Survey, what will be referred to as the Forse Survey, what will be referred to as the Crook Survey, what will be referred to as T. & N. O. No. 3, and what will be referred to as T. & N. O. No. 4, the latter two being Surveys No. 3 and No. 4, Block 6, of surveys made for Texas & New Orleans Rail Road Company. But three of these, the T. & N. O. No. 4, the Crook, and the Forse, play parts which are interwoven, since it was as the T. & N. O. No. 4 that most, if not all, of the land in both the Crook and the Forse was first surveyed.

The called courses of all pertinent north and south lines of the six surveys are either N. 88 E. or S. 88 W., and the called courses of all pertinent east and west lines of the surveys are either N. 2 W. or S. 2 E.

If in fact the land in controversy is vacant and unsurveyed public school land, it is bounded on the west by the Crook and by the Forse, on the south by the Stark League, on the east by the Stark Labor, and on the northeast and north by T. & N. O. No. 3. If it is not vacant and unsurveyed public school land, the greater part of it is in the Crook Survey, and the remainder of it is either in the Forse Survey or is divided be-

tween that survey and T. & N. O. No. 3 or between T. & N. O. No. 4 and T. & N. O. No. 3.

The alleged vacancy comprises 36.24 acres and is represented by the shaded portion of the following plat:

The Stark League, which was surveyed May 1, 1838, is the senior survey among those we have mentioned. The next oldest is the Stark Labor, which was surveyed May 2, 1838. Then comes the Lewis Dunning, which was surveyed December 7, 1874. T. & N. O. No. 3 and T. & N. O. No. 4 first came on the scene in June of 1876, at which time C. A. Nation undertook to survey a sixteen-section block, Block 6, for Texas & New Orleans Rail Road Company and thereby to take up all vacant land between quite a number of surveys which had been theretofore located in such a manner as to form a highly irregular pattern. Nation's field notes failed, for the most part, to receive approval in the General Land Office. Corrected field notes were filed by the same surveyor in December, 1876, but these also failed to gain approval. The matter rested there for several years. Then, in January of 1886, T. G. B. Cox undertook to resurvey the entire block of surveys. Cox' notes represented T. & N.

O. No. 3 as containing 640 acres but represented T. & N. O. No. 4 as containing only 614 acres, whereas Nation's notes had, in each instance, represented the surveys as each containing 640 acres. Personnel of the General Land Office found Cox' notes for T. & N. O. No. 3 incorrect and noted the errors on them March 29, 1886, but, on the same day, endorsed his field notes for T. & N. O. No. 4 as follows: "Correct for only 614.4 acres." Cox submitted corrected field notes for T. & N. O. No. 3, wherein he represented the survey as containing only 613 acres. On December 20, 1886, the amended notes were endorsed in the General Land Office with this endorsement: "Correct on the map of Newton County." On the same day, a new endorsement was placed on Cox' notes for T. & N. O. No. 4, towit: "Correct for 614 acres on map of Newton County." Without more ado, T. & N. O. No. 3 was patented January 6, 1887. T. & N. O. No. 4 was never patented as such, but was sold or awarded as such in 1901. J. W. Link was the original purchaser. He deeded the land to J. M. Hughes in 1905, and Hughes deeded it to J. B. Forse in 1913. Then, in 1915, J. B. Forse conveyed to W. M. Crook and others 160 acres of the land, the same to be surveyed in the form of a square in the southeast corner of the survey. The ownership of it having become thus divided, the land was resurveyed as two separate tracts, so that each tract might be patented as a separate survey. The resurveying was done by A. A. Miller, and the Miller field notes recited that it was done on March 25, 1924. The Crook and the Forse were the surveys so created. A patent for each was issued April 10, 1924.

The north line of the Stark League—the called course of which is S. 88 W. from the survey's northeast corner—is common to all of the surveys that have been mentioned, T. & N. O. No. 3 excepted. In other words, it is the south line of each of the following surveys: the Stark Labor, the Lewis Dunning, the T. & N. O. No. 4, the Crook, and the Forse. Not only was it called for as such in the field notes of the surveys, but all parties to the suit accept it as such. Its location is not disputed.

As previously indicated, both the Stark Labor and the Lewis Dunning are senior to the surveys that were made for Texas & New Orleans Rail Road Company. T. & N. O. No. 4 was constructed between the two, and its field notes call for it to adjoin both. The field notes (Cox'), in material part, are as follows:

"Beginning at a stk the S.W. cor. of W. H. Starks Labor on the N. line of Starks League a Dogwood brs S 21½ E 3 vrs. a P. brs. N 24 E 1.9 marked W.H.S.

"Thence N. 2 W. with said Labor at 1000 vrs passed the N.W. cor 1837 vrs the N.E. cor. of No. 4 and a cor of No. 3 a P.O. brs. N. 4½ E 7 vrs. R.O. brs N 47 E 12 varas

"Thence S. 88 W. at 1885 vrs the N.W. cor of No. 4 on the E. line of Lewis Dunning a R.O. brs S 10 W 2 vrs DO brs N. 55 W. 34 vrs

"Thence S. 2 E. with Dunning line at 1837 varas stk on the N. line of W.H. Starks League

"Thence N. 88 E. at 1885 varas the place of beginning."

The following are the field notes of the Crook Survey:

"Field notes of a survey of 160 acres of land made in the name of W. M. Crook, C. A. Lord, W. I. Lawhon, and L. E. Ney, same being the S.E.¼ of section 4 T. & N. O. Ry Co. cert. No. 289 situated about 10½ miles S. 30 E. from the county site on the Waters of Davis Creek, and more fully described as follows towit:

"Beginning at the S.W. corner of the W. H. Starks labor on the North boundary line of the W. H. Starks league from which a pine brs N 24 E 1.9 vrs, and do S 35 E 8 vrs;

"Thence S 88 W with the North boundary line of said league at 950.4

vrs stake for corner a small pine brs N 25 E 3 vrs and a do. brs. S 30 W. 2 vrs;

"Thence N 2 W at 950.4 vrs stake for corner;

"Thence N 88 E at 950.4 vrs stake for corner in the West boundary line of said labor;

"Thence S 2 E with said line at 950.4 vrs to the place of beginning."

The field notes of the Forse Survey read in this manner:

"Field notes of a survey of 454 acres of land made in the name of J. B. Forse, same being the ballance of section No. 4, T. & N. O. Ry. Co. Cert. No. 289 situated on the waters of Davis creek, about 10 miles S. 30 E. from the County site: more fully described as follows to wit:

"Beginning at the S.E. corner of Lewis Dunning survey in the North boundary line of the W. H. Starks league from which black gum brs N 11 E 6 vrs. and do. brs S 66 W 8 vrs;

"Thence N 2 W with the East boundary line of said Dunning at 1840 vrs stake for corner a red oak brs N 10 W 2 vrs a do. brs N 56 W 4 vrs;

"Thence N 88 E with the north boundary line of said section at 1885 vrs stake a post oak brs N 47 E 12 vrs. and red oak brs N 4 E 7 vrs;

"Thence S. 2 E with the East boundary line of said section at 890 vrs the N.E. corner of a 160 acre survey made in the name of W. M. Crook, C. A. Lord, W. I. Lawhorn, and L. E. Ney;

"Thence S 88 W with the north boundary line of said tract at 950.4 vrs. stake for corner;

"Thence S 2 E with its west line at 950.4 vrs stake for corner in the North boundary line of said Starks league;

"Thence S 88 W with the North boundary line of said league at 935 vrs to the place of beginning."

The field notes for T. & N. O. No. 3 call, in effect, for the survey to adjoin T. & N. O. No. 4 on the latter's east and north. They actually call to run from the northwest corner of the Stark Labor "N 2 W 837 Stake for N.E. cor of No. 4 this block fr. wh a PO—N 24½ E 7—RO N 47 E 12" and then "S. 88 W 1885 stk for N W cor of No. 4 on L Dunnings E line—RO S 10 W 2—RO 15" N 55 W 34."

Needless to say, the field notes, whether those of T. & N. O. No. 4 or those of the Crook and the Forse, appear to leave no vacancy. But, as is so often the case, they contain some erroneous and inconsistent calls.

The corner that surveyor Cox set as the northeast corner of T. & N. O. No. 4 and as an internal corner of T. & N. O. No. 3 still can be identified by its original witness trees and is acknowledged by both sides. It is approximately its called distance of 1885 varas from the east line of the Lewis Dunning Survey, the actual distance being near 1890 varas, but it is not where the first call in the field notes of T. & N. O. No. 4 would place it. The latter call would place the corner in a projection of the Stark Labor's west line, at or near the location that is represented on the plat by point F. The corner is actually 138 varas west of there, at the place that is represented on the plat by point D.

The north and south lines of T. & N. O. No. 4 are called to be of equal lengths, 1885 varas each, and the south line is called to extend from the southeast corner of the Lewis Dunning Survey to the southwest corner of the Stark Labor. But, whereas the north line is approximately its called length, the distance between the Dunning's southeast corner and the Labor's southwest corner is approximately 2,016 varas, or 131 varas greater than the field notes represent it to be.

The northeast corner of the Forse is the same, the parties agree, as the northeast corner of T. & N. O. No. 4. The Forse's most northerly east line is called to run from such corner S. 2 E. to a point in the west line of the Stark Labor. Run on its called course, the line would never reach the Labor's west line, but would be parallel to it, and approximately 138 varas west of it.

Between them, the south line of the Crook and the most southerly south line of the Forse are called to extend from the Stark Labor's southwest corner to the Lewis Dunning's southeast corner, but the sum of their called lengths is only 1885.4 varas. As we have already stated, the actual distance between the mentioned corners is 2,016 varas.

With the foregoing facts and discrepancies as a base on which to build, appellees undertook to prove that the southeast corner of T. & N. O. No. 4 and the southeast corner of the Crook are both located at the place that is represented on the plat by uncircled number 1, or 152.83 varas S. 87° 51' W. of the southwest corner of the Stark Labor; that a line which is represented on the plat by the line between uncircled number 1 and letter D is the east line of T. & N. O. No. 4 and of the Crook and of the Forse; that the calls for adjoinder on the east sides of the three surveys were made through mistake and should be rejected.

The parties agree as to the following matters: 1) the locations of the west line and corners of the Stark Labor; 2) the location of the north line of the Stark League and that the line is the south line of T. & N. O. No. 4 and of the Crook and of the Forse; 3) the locations of the east line and southeast corner of the Lewis Dunning Survey and that the line and corner are the west line and southwest corner of T. & N. O. No. 4 and of the Forse; 4) the locations of the north line and corners of T. & N. O. No. 4 and of the Forse. In addition, they stipulated that a straight line between the accepted northwest corner of the Stark Labor and the accepted northeast corner of T. & N. O. No. 4 is one boundary of T. & N. O. No. 3. The parties are also in accord about how the Crook Survey should be reconstructed, once its east line is ascertained. Each side reconstructs the survey as a parallelogram and gives the lines of the survey their called lengths. The west line of the Crook Survey is accepted as being, in any event, the most southerly east line of the Forse.

The agreed survey corners are represented on the plat by points A, B, C, D, E, and the agreed locations of survey lines are represented by the solid lines connecting those points. Under appellants' reconstruction of the Crook Survey, the survey's corners are located as represented on the plat by the points that are designated by circled numbers. Under appellees' reconstruction of the survey, the corners are located as indicated by uncircled numbers.

The line by which appellees would bound T. & N. O. No. 4, the Forse, and the Crook on the east (D–1) is in part a marked line which extends southward from the accepted northeast corner of T. & N. O. No. 4 a few hundred varas and is in part a projection of that line along the line's course of South 1° 38' East. The location they claim for the southeast corner of T. & N. O. No. 4 and of the Crook is the point at which the projected line intersects the accepted north line of the Stark League.

Despite the inconsistency that would seem to be involved, appellees do not claim that the southeast corner of the Crook Survey was originally located at the location they themselves now claim for it. Instead, they take the position that Miller actually established the corner some twelve varas, or approximately 35 feet, north of the accepted north line of the Stark League, at the location that is represented on the plat by point 1a. The location is in or near the line their surveyor ran as the east line of the Crook and is a point from which an unmarked pine stump bears S. 35 E. 8 varas, and from which another unmarked pine stump bears

N. 24 E. %oths of a vara. The surveyor testified that he concluded that the stumps were stumps of the witness trees called for in Miller's field notes, one of which was a pine bearing S. 35 E. 8 varas, and the other of which was a pine bearing N. 24 E. 1.9 varas. He also said, or at least implied, that a marked line which remained north of the accepted north line of the Stark League to near the southwest corner of the Lewis Dunning Survey (and which is represented on the plat by dashes) extended westerly from the point (1a) or from its immediate vicinity. He did not go into detail about the line as it would lie east of the corner that is represented on the plat by point X (the northwest corner of a 110-acre tract that was surveyed for one Amert Sharp), but did say that it existed in the area through which he ran the line appellees claim as the east line of the Crook, and expressed himself as of the opinion that Miller had mistaken the line for the League line and had used it as the south line of the Crook and of the Forse. He obviously was of the opinion that the line antedated Miller's work, and he perhaps implied that it extended east of point 1a as well as west of it. He made clear that farther west the line had been accepted by surveyors other than Miller as the League line. He said, for example, that he found the northwest corner of the Amert Sharp tract in the line and ten or twelve varas north of the accepted line; the corner was called to be in the League line. He said, also, that he found in the line and in the east line of the Dunning Survey a concrete marker which had been set in recent years as the Dunning's southeast corner. The marker was 26.4 varas north of the accepted corner location (point B). He admitted that from east to west the accepted line was well marked to the northeast corner of the Amert Sharp tract (point Y).

The surveyor did not expressly testify that point 1a was at the intersection of the more northerly marked line and the line he ran as the Crook's east line, nor that it coincided exactly with either of the lines.

He found no evidence of a corner site at the location appellees claim for the southeast corner of T. & N. O. No. 4 and of the Crook (uncircled 1), nor at the location appellees claim for the Crook's southwest corner, and admitted that, so far as he knew, no corner had ever been marked at either location.

The marked line that extends southward from the accepted northeast corner of T. & N. O. No. 4 and of the Forse, the line appellees seek to utilize, was identified by one of appellees' witnesses as a line A. A. Miller followed, at least upon one occasion, while attempting to retrace the lines of T. & N. O. No. 4. Having first stated that he had had "some dealings with [Miller] about surveying out the line of T. & N. O. Section 4," Amert Sharp testified that in 1924, as best he recalled, he and Miller retraced the west and north lines of T. & N. O. No. 4 and followed a marked line southward from the survey's northeast corner for quite some distance. They did not, he said, follow the latter line as far south as the north line of the Stark Labor but quit it upon arriving at a dense thicket not far north of the road that is in part depicted on the plat. He said that upon arriving at the thicket Miller expressed himself as feeling ill and that they skirted the thicket on its east side, walked southward to the road, and followed the road back to where Miller's car was parked in the Stark League. Before going to the automobile, however, they went, he said, to a marked corner which was near the road and in the League's north line. Enroute there, according to his further testimony, they crossed Albert Singleton's field and went "down the side of an old wire fence" to a pine tree that was marked with an X which appeared to be quite old. They were then, he said, at Singleton's southwest corner and also at Shade Adams' land; and it is undisputed that the southwest corner of the Singleton land and the northwest corner of the Adams land are at the southwest corner of the Stark Labor. Miller, according to the witness, went to

the marked pine and remarked, "Here is a corner right here," and added, "Man, I know that corner; that's the Adams tract of land." Sharp said that he agreed with Miller that it was the Adams corner. He said, also, that Miller remarked that when he got well he would return and they would "pick up" on that corner, but that Miller never returned, so far as the witness knew.

Not only does it not appear that Miller and Sharp had with them either a surveying instrument or a chain, but it fairly may be said that, by failing to challenge the pertinent part of an affidavit he himself had made earlier, Sharp, who had been requested to challenge the parts of the affidavit he deemed incorrect, impliedly testified that he and Miller had neither of those rather essential items. Nevertheless, and despite the fact that in his field notes Miller named Tom Booker and N. A. Dawson as having been his chainmen, appellees would seem to take the position that what we have described as having been done by Miller and Sharp constituted Miller's ground work in surveying the Crook and the Forse. In any event, they take the position that Sharp identified Miller's "footsteps" from the southwest corner of T. & N. O. No. 4 to where the witness and Miller abandoned the marked line they followed southward from the survey's northeast corner.

The only evidence that dealt with the subject explicitly was to the effect that the marked line last mentioned could not be identified beyond five or six hundred varas south of the northeast corner. Appellees' surveyor may have implied, but he did not say, that the line could be identified as far south as the Labor's north line or as the north line of the Crook. He admitted that he considered the "brushed out" line he found farther south as only a "transit line" someone had run. The evidence strongly suggests that Miller surveyed the Crook and the Forse in 1921 or earlier, rather than in 1924 as he represented in his field notes; that, in so doing, he actually ran only the south line of the Crook and the west and north lines of the Forse; and his return to the scene with Amert Sharp in 1924 was probably prompted by a suspicion that the field notes that he was about to submit were not correct, a suspicion on which he failed to follow through to resolution.

The parties differed about the ages of markings found along the line, but Amert Sharp testified that the markings he and Miller followed were quite old when he and Miller were there in 1924, and another of appellees' witnesses, one who had been on the line not long before the case was tried in 1958, estimated that some of the markings were as much as seventy-five years old. The surveyor for appellees said that, including painted markings which had been placed along the line within the comparatively recent past, he himself found markings of three different ages when he retraced the line in 1952. An expert witness for appellants produced in court markings which he said he judged to be as old as any on the line; one of these was old enough to have been made in 1921; the other had been made more recently.

No evidence tending to show that a line corresponding to the stipulated boundary of T. & N. O. No. 3 (D–E) had ever been marked on the ground prior to the time at which appellee Campbell initiated his vacancy claim was found. Campbell, it seems, arbitrarily adopted the line as one boundary of the alleged vacancy. When run from the northeast corner of T. & N. O. No. 4, the line runs S. 11° 16′ E. A marked line, a projection of the Stark Labor's west line, extends from the Labor's northwest corner to a marked corner which is represented on the plat by point F, but neither side claims it as a boundary of any of the surveys. Thus may be seen, from the facts and circumstances set forth above, the basic error that is involved is the error with reference to the distance between the Stark Labor and the Lewis Dunning Surveys. It originated with C. A. Nation's work or earlier. Although Nation's work was not accepted by the General Land Of-

fice, maps during the period in use indicated the distance between the Labor and Dunning Surveys as 1,885 varas, and it appears that all three surveyors accepted this distance, though clearly erroneous.

The jury, in response to special issues 1, 2, and 2a, found that surveyor A. A. Miller, in surveying the Crook Survey, located the survey's northeast corner "in the east line of T. & N. O. Section No. 4" at the loca-' tion that is represented on the plat by uncircled number four, located the survey's southeast corner at the location that is represented on the plat by uncircled number one, and located the east boundary line of T. & N. O. No. 4 as represented on the plat by the dashed line between points D and uncircled number one. The jury failed to find from a preponderance of the evidence that Miller established the southeast corner of the Crook at the location that is represented on the plat by circled number one or that he established the northeast corner of that survey at the location that is represented on the plat by circled number four. The special issues by which the latter two questions were submitted (special issues 3 and 4) were both answered in the negative.

Both a motion for an instructed verdict and a motion for judgment non obstante veredicto were seasonably urged in the trial court by appellants and were overruled. Appellants here urge, in effect, that the trial court erred in each instance in not granting the motions. They specifically urge, under their first three points, that, as a matter of law, the evidence locates the southeast corner of the Crook Survey at the undisputed location of the southwest corner of the Stark Labor, locates the east line of the Crook in and on the undisputed location of the Labor's west line, locates the most northerly east line of the Forse Survey in and on the undisputed location of the most southerly west line of T. & N. O. No. 3, and that the trial court erred in failing to so hold. In addition, under points four through eight, the jury findings are attacked as being without any sup-

port in the evidence; as being, in- the alternative, without sufficient support in the evidence; and as being, in the further alternative, so contrary to the overwhelming weight and preponderance of the evidence as to be manifestly wrong. Appellants also urge, under point nine, that, irrespective of where Miller located the east lines of the Forse and the Crook, the evidence, as a matter of law, establishes that no vacancy exists. We have concluded that most of the nine points must be sustained.

■■ The actual dates of the surveys of the Crook and Forse are not known, but since calls in the Forse are to adjoin the Crook, and the absence of any call in the Crook to adjoin the Forse, this clearly indicates that the Crook is senior to the Forse. Thomson v. Langdon, 87 Tex. 254, 255, 28 S.W. 931, 935. Any inconsistency or conflicts, therefore, occurring between the Forse and Crook field notes cannot affect the Crook Survey. Its field notes are complete and unambiguous and are readily found on the ground by their own calls. An examination of the field notes for the Crook call to begin at the south west corner of the W. H. Starks Labor, describing the bearing trees as set forth at that corner, and the Crook's north line calls to join the west line of said Labor; thence S. 2 E. "with said line" to the place of beginning. Inasmuch as the parties agree upon the location of the long and well established northwest and southwest corners and west line of the Labor, the calls for adjoinder thereto in the Crook notes indisputably anchor the Crook to the Labor and make the location of the former certain. Thomson v. Langdon, supra; State v. Sun Oil Co., Tex.Civ.App., 114 S.W.2d 936. In holding the Crook adjoins the west line of the Labor, we give effect to all calls in the Crook field notes; whereas, to hold contrariwise would require us to disregard four distinct calls therein. The evidence of appellees' surveyor, as pointed out earlier in this opinion, as to what he found for, or established as the southeast corner of the Crook on the plat at either

uncircled number 1 or 1A is too weak to raise a jury issue. Premier Royalty Co. v. New Birmingham Development Co., Tex.Civ.App., 150 S.W.2d 269; Guill v. O'Bryan, Tex.Civ.App., 121 S.W. 593. And the work of the surveyor Miller, in attempting to locate the east line of Section 4, in connection with his furnishing field notes on the Forse and Crook tracts, based on the testimony of appellees' witness Sharp outlined above, is so unsatisfactory that the east line of the Crook as the jury found Miller had located it should not stand.

 Since, as has been stated earlier in this opinion, Sections 3 and 4 were both a part of a block or system of surveys, and the claimed vacancy existing within the area is based upon the agreed line D–E of Section 3 and since this is an interior line, no reconstruction of Section 4 is possible except for the northern part of its east line to run upon the line D–E. Findlay v. State, Tex.Civ.App., 238 S.W. 956, 973, affirmed 113 Tex. 30, 250 S.W. 651; Duval County Ranch Co. v. Rogers, Tex.Civ.App., 150 S.W.2d 880. Though this holding requires that the call for course and distance "N. 2 W." from the northwest corner of the Stark Labor in the field notes of both Sections 3 and 4 prepared by Cox must give way, the course being actually "N. 11° 15' W." to so hold will construct the surveys in such manner as will best give effect to the intention determined from the entire description. Stanolind Oil & Gas Co. v. State, 129 Tex. 547, 101 S.W.2d 801, 807, 104 S.W.2d 1. This follows, we think, since the evidence very strongly indicates that Cox established the N.E. corner of Section 4 from the west rather than from the south, basing his distance on the erroneous assumption that the Stark Labor and Dunning Surveys were separated by a distance of 1,885 varas, and that then—if in fact he ran any part of the east line—he ran S. 2 E. only the distance that should have brought him, as he had reason to suppose, to the northwest corner of the Stark Labor. In disregarding the call "N. 2 W." for course and the manifestly er-

roneous call of 1,885 varas between the east line of the Dunning Survey and the west line of the Stark Labor, we uphold the other calls, including the adjoinder calls in the Labor and Dunning Surveys, thereby disregarding as few of the calls as possible and giving effect to the rule that no vacancy shall be held to exist in construing interior lines of a system of surveys. In doing this, we also give effect to the intention of the General Land Office that there should be no vacancy in having approved Cox's field notes for Sections 3 and 4 calling for a common boundary northwest of the corner of the Stark Labor. Giles v. Kretzmeier, Tex.Civ.App., 239 S.W.2d 706(9).

We, therefore, sustain appellants' first three points, and their Points 6, 7, and 8 which are to the effect the trial court erred in failing to sustain appellants' motion for judgment non obstante veredicto. This makes it unnecessary to pass upon Point 9.

The judgment of the trial court is, therefore, reversed and judgment is here rendered that appellees (including intervenor) take nothing of appellants, and that appellants recover of appellees all costs in this behalf accrued.