## SIMMONS et ux. v. WEIS et al.

### No. 10658.

Court of Civil Appeals of Texas. Galveston.

June 22, 1939.

Rehearing Denied July 20, 1939.

Lewis Fogle, of Houston, for appellants.

L. A. Kottwitz, of Houston, for appellees R. J. Weis and wife, Lucy Weis.

J. E. Price, of Houston, for appellee Mrs. Margaret C. Osgood.

Lawler, Wood & Childress and Ralph R. Wood, all of Houston, for appellee Mrs. Grace Agen Vallas.

MONTEITH, Chief Justice.

This is an appeal from a judgment of the District Court of Harris County in a trespass to try title action brought by appellants, C. A. Simmons and wife, against Lucy Weis and her husband, R. J. Weis, for the title and possession of 60.45 acres of land alleged to be part of a tract of 202 acres patented to W. B. Slosson, assignee, out of a part of the H. & T. C. Ry. Co. Survey No. 56, in Harris County, Texas. Defendants Weis and wife answered by a general denial and plea of not guilty, the 3, 5, 10, and 25 years statutes of limitations, and disclaimer as to the western portion of the land in controversy. By cross-action they impleaded Grace Agen Vallas, executrix of the will of James H. Agen, deceased, and her husband, Horace H. Vallas, on a warranty of James H. Agen. Grace Agen Vallas, as such executrix, joined pro forma by her husband, answered said cross-action by a plea of general demurrer and general denial.

Margaret C. Osgood, by plea of intervention, alleged the ownership in herself of a portion of the land in controversy, and, as defendant, answered by general demurrer and general denial and a plea of not guilty, and the pleas of 3, 5, 10, and 25 years statutes of limitations. By cross-action complaining of C. A. Simmons and wife, she alleged the ownership in herself of approximately the east one-half of the land in controversy.

Appellants answered the plea of intervention of Margaret C. Osgood by pleas of general denial, not guilty, and valuable improvements.

While this action is in the form of trespass to try title it is in fact a boundary suit to determine the location of the south line of the William Waters survey. The particular question for determination is whether the field notes of said tract of 60.45 acres of land out of the W. B. Slosson survey place it within the bounds of or outside of the William Waters 320 acre survey.

The case was tried to a jury, who, in answer to one special issue submitted, found the true south boundary line of the William Waters survey to be as claimed by appellees.

Based on the answer to said special issue, judgment was returned against appellants as to the land sued for and in favor of defendants and the intervenor, and that cross-plaintiffs, Weis, take nothing as against Grace Agen Vallas and her husband on their cross-action. Said judgment defined the boundaries of the William Waters survey and found that portion of Section 56, Block 3, Certificate No. 28266, H. & T. C. Ry. Co. Survey in Harris County, Texas, granted by the State of Texas to W. B. Slosson, lying east of the center line of the "Jones Road" to be in conflict with the William Waters survey, and that it is junior, subordinate, and inferior thereto.

For the purpose of illustrating the contentions of the parties we insert map showing the location of the William Waters survey and the surrounding surveys on which its location is claimed by the respective parties to be based:

This suit involves that part of the 202 acre H. & T. C. Ry. Co. Survey No. 56 patented to W. B. Slosson, assignee, on April 30, 1930, based on a survey made by surveyor Wicklund on July 30, 1929, east of what is known as the Jones Road and designated on map as extending between the points "J" and "C". The entire 202 acres is described as follows: "Beginning at a concrete monument marked NW 56 on top, on the S. line of the A. Lawson Survey 104.976 varas east of a monument marked SWL on top, the SW corner of the said A. Lawson Survey; Thence S. O deg. 30' E. 290.402 vrs. to a concrete monument marked SW on top, on the N. line of the M. Woods Sur. in a fence; Thence with the N. line of said M. Wood Survey F. McNaughton and George W. Eaton Surveys S. 89 deg. 51' at 1266.084 vrs. pass N. E. corner of Wood, and N. W. corner of McNaughton at 2246.256 vrs. center line of county road 2968.524 vrs. 1/2" pipe and concrete monument corner McNaughton and George Eaton Surveys 3660.624 vrs. to a concrete monument marked SE 56 on top, the S. W. corner of the E. Harbour Survey; Thence N. O deg. 30' W. 332.748 vrs. to a concrete monument marked NE 56 on top, the S.E. corner of the Wm. Waters Survey; Thence with the west line of the Wm. Waters, J. Morgan and A. Lawson Surveys 1411.992 vrs. center line of road and S. W. corner of said Waters Survey, the S. E. corner of said J. Morgan Survey at 829.44 vrs. center of county road 2248.408 vrs., concrete monument marked SEL on top and S. E. Corner of A. Lawson and S. W. corner of J. Morgan Survey 3660.408 vrs. S. 89 deg. 30' W. to place of beginning."

The 60.45 acres of land for which plaintiffs sue is described as follows: "The eastern part of Section 56, Block 3, Certificate No. 28/2064, H. & T. C. R. R. Co. Survey in Harris County, Texas, and being out of the east end of a tract of 202 acres patented by the State of Texas to W. B. Slosson, described as follows: Beginning at a point where the South line of said 202 acre tract crosses the center line of the Jack Rabbit Road on the north line of the McNaughton Survey; Thence S. 89 deg. 51' E. along the south line of said 202 acre tract and the north line of the McNaughton and Eaton Surveys 1223.338 vrs. to the S. E. corner of said 202 acre tract, a concrete monument marked SE 56 on top; Thence N. O deg. 30' W. 332.-748 varas to a concrete monument marked

NE 56 on top, being the N. E. corner of said section 56 and the N. E. corner of said 202 acre tract and the S. E. corner of the William Waters Survey; Thence S. 89 deg. 30' W. along the south line of said Waters Survey and the north line of said 202 acre tract which is also the north line of said section 56,829.44 vrs. to a point in the center of said Jack Rabbit Road; Thence S. 55 deg. 48' W. along the center line of said Jack Rabbit Road to the place of beginning, containing 60.45 acres."

In the year 1838 Henry Trott made surveys of the Clarkson, the Graham, the Habermacher, the Henry Lawson, the Egbert, the McNaughton, and the Turner surveys. In each of these surveys, George H. Bringhurst was one of the chain carriers.

In 1844 George H. Bringhurst made surveys of the Waters, the Vickary, the James, the Eaton, the Childress, and the York surveys.

The field notes of the Findlay McNaughton survey, made by Trott in 1838, call to begin "at a stake in the prairie, being the N. E. corner of a survey made for C. Clarkson, and the N. W. corner of a survey made for James Egbert; thence W. 1720,6 varas with said Clarkson's N. boundary line to a stake and mound in the prairie, crossing a branch of White Oak Bayou at 210 varas; thence N. 2100 varas to a stake and mound in the prairie on the S. boundary line of a survey made for Lawson; thence E. 1720.6 varas with said Lawson's line, passing his S. E. corner to a stake and mound in prairie; thence S. 2100 varas to the place of beginning."

The field notes of the Eaton survey made by Bringhurst in 1844 call for its N. W. corner to be the N. E. corner of the Findlay McNaughton survey. The field notes of the Waters, the Vickary, and the James surveys made by Bringhurst in 1844 call for their S. lines to be a common line with the N. line of the McNaughton and the Eaton surveys.

The field notes of the Waters survey call to begin at the S. E. corner of the Andrew Lawson on the N. boundary line of the Findlay McNaughton survey, "a stake and mound in prairie; thence to run N. with the E. boundary of the Lawson survey to his N. E. corner, a stake and mound in prairie; thence E. 1444 varas to a stake and mound in prairie, the N. W. corner of the Thos. Vickary; thence S. 1251.7

varas with Vickary's W. boundary to his S. W. corner on Eaton's N. boundary line, a stake and mound for fourth corner; thence W. 1444 varas with Eaton's and McNaughton's N. boundary lines to place of beginning."

The field notes of the Andrew Lawson survey, lying to the west of the Waters survey, made by Trott with Bringhurst as his chainman in January 1938, call to begin at a stake and mound in prairie on the south boundary line of the Hugh Frazier survey, which is Graham's northeast corner, and to run east 1412 varas with Frazier's line to his southeast corner (which in the Waters' field notes is called to be the northwest corner of the Waters), a stake and mound in prairie.

J. Stewart Boyles, a witness for appellant, testified that he had made an actual survey of the Hugh Frazier survey, and that he found the calls for creek crossings in its field notes, 500 varas south of its northwest corner and 360 varas east of such corner, checked by actual survey on the ground, and that said survey, which is now abandoned, was originally located on the ground as shown by the letters A, B, C, and D on the plat. This testimony, which is uncontroverted, places the southeast corner of the Hugh Frazier at the northwest corner of the William Waters survey.

Since none of the corners or lines of the William Waters survey can be located on the ground without the assistance of lines and corners of adjoining surveys, it becomes necessary that such survey be located with reference to the location on the ground of the senior surveys for which its field notes call. In other words, to ascertain where, on the ground, the surveyor Bringhurst actually ran the lines of the William Waters survey and on what he based the location of said lines and corners. In order to determine this question any call sufficiently clear and definite to fix the location of a particular corner of the tract in question may be used.

In this case the Findlay McNaughton and the George W. Eaton surveys are definitely located on the ground. The Waters Field notes call for a south boundary line with the Eaton and McNaughton north boundary lines. To make the location of the Eaton and the McNaughton more certain, the second call in the field notes of the McNaughton survey, as above stated, calls to run from the northeast corner of the Clarkson

survey west "crossing a branch of White Oak Bayou at 210 varas". This call in the field notes of the McNaughton, indicating an actual survey on the ground, likewise occurs in the field notes of the Eaton. Bringhurst was one of Trott's chainmen in the survey of the McNaughton in 1838. In 1844 he surveyed the Eaton, calling for it to begin at McNaughton's southeast corner, Clarkson's northeast corner, and Egbert's northwest corner, "a stake at mound in prairie 210 varas east of a fork of White Oak Bayou".

Further, the calls for adjoinders with the Lawson and the Graham on the west and with the Hugh Frazier on the north, with its northwest corner definitely fixed by two calls for creek crossings, in our opinion definitely locate the William Waters survey as claimed by appellees.

The Commission of Appeals, in discussing the issues involved in a boundary suit in the case of Kirby Lumber Co. v. Gibbs Bros., Tex.Com.App., 14 S.W.2d 1013, 1014, lays down the following rule: "The primary purpose of every inquiry like this is to ascertain where on the ground the surveyor actually laid the land, or where the grantor actually intended it to be located when there was no actual survey. To determine this all-important matter any call sufficiently clear and definite to determine location will be observed. Where that call, as here, is for an adjoining survey, it can make no difference that such survey is for any one reason invalid. It is not a question of validity of the survey called for, but rather one of the corner or line of such so-called survey. * * * It is a question of where the surveyor or grantor did place, or meant to place, the subsequent tract. * * * The rule above discussed applies to and includes, necessarily, those senior surveys whose boundaries may be established by any of the recognized rules of construction of surveys, and includes corners and lines determined by course and distance, as well as those identified by natural or artificial objects on the ground."

Continuing, the court says: "Where a senior line is established, the junior begins and the calls for distance and acreage * * * must yield accordingly. A call for an adjoinder is like a call for a natural or artificial object, and any conflicting call for course, distance, or acreage, and the like, must yield." This rule is followed by the Supreme Court in the case of Stanolind

Oil & Gas Co. v. State, 129 Tex. 547, 101 S.W.2d 801.

■ 7 Tex.Jur. lays down the rule that: "It should be held that where a survey is not actually made upon the ground but is platted with reference to surrounding surveys whose lines are marked and established, these surveys will control its location."

In the case of Kirby Lumber Co. v. Adams, 127 Tex. 376, 93 S.W.2d 382, 385, by Commission of Appeals, it is held that: "Where the natural and artificial objects of the grant cannot be identified upon the ground, the proper method of locating the lines * * * will be by course and distance from the nearest recognized and established corner or artificial object with which the field-notes are connected. Petty v. Paggi Bros. [Tex.Com.App.] 254 S.W. 565."

■ Appellants' case is based largely on the call for distance in the field notes of the York survey of 280 varas from the northwest corner of the William Waters survey to be the southwest corner of the Childress. They contend that, since Bringhurst surveyed the Childress, the York, the Waters, the Vickary, the James and the Eaton surveys at approximately the same time, and since the field notes in both the Childress and the York surveys call for natural objects, such as crossing of roads and bearing trees, evidencing the fact that the Childress and York were actually surveyed on the ground, that said call for 280 varas should control notwithstanding the fact that there is no call in the Waters for the York or the Childress and the fact that if the Waters be given the location claimed for it by appellants all calls in the Waters field notes for adjoiners with other surveys must be disregarded.

In the case of Thomson v. Langdon, 87 Tex. 254, 28 S.W. 931, 935, under a state of facts similar in many respects to those in the instant case, the Supreme Court, speaking through Chief Justice Gaines, lays down the following rule: "The field notes of survey No. 105 call to begin at the southwest corner of No. 104, and show that it was the intention of the surveyor to leave no vacant land between the two surveys. They suggest that the surveyor made a mistake in his call for the length of the east line of No. 104, or of the corresponding line of No. 105, or in both of these lines. But we apprehend that it is not proper to resort to the calls in the field notes of another survey, although made at the same time and by the same surveyor, to create a conflict in case none arises from the calls of the survey in question when applied to objects called for as actually found on the ground. Survey No. 104 can be established by course and distance from its beginning corner without disregarding any call contained in it, and, in our opinion, it should be so established."

In the case of Keystone Mills Co. v. Peach River Lumber Co., Tex.Civ.App., 96 S.W. 64, 65, under a similar state of facts, it is held that the field notes of a junior survey cannot be resorted to for the purpose of creating an ambiguity in the calls of a senior survey.

In the case of Polk v. Reinhard, Tex.Civ. App., 193 S.W. 687, 690, in passing on the questions involved in a boundary suit similar in many respects to the facts in the instant case, the court says: "The field notes of said survey are complete in themselves, and do not contain any inconsistent calls. It is not permissible to look to the field notes of another survey in order to create an inconsistency in the calls of survey No. 399."

It is held in the case of Petty v. Paggi Bros. Oil Co., 254 S.W. 565, 568, by the Commission of Appeals, that: "Where the field notes of the survey are complete in themselves, and one corner can be located by course and distance from another established corner, it ought to be so established, and it is not permissible to look to the field notes of another survey to create an inconsistency in the calls. * * * Davis v. Smith, 61 Tex. [18] 21; Upshur County v. Lewright (Tex.Civ.App.) 101 S.W. 1013."

Under the above authorities we must overrule appellants' contention.

■ Further, in the event we are in error in holding that the William Waters survey is definitely located on the ground by calls for adjoiners with senior surveys, the lines and corners of which are identified by natural and artificial objects located on the ground, we are of the opinion that, the jury, having located said boundary line under the instruction of the court, and having found that the disputed strip was a part of the William Waters survey, and there being evidence to support such findings, this court is bound by the verdict of the jury.

7 Tex.Juris, Section 91, page 252 et seq., lays down the rule that: "The issue as to

where boundaries are located is a question of fact for the jury, or in the absence thereof, the court. Accordingly it is a question of fact as to where a surveyor intended to place a line of survey, as to which, if any, of the conflicting calls were made by mistake, and as to which should be given precedence. It is also a question for the jury whether any or all of the lines of a survey were actually run upon the ground and whether a line became fixed by acquiescence at the place claimed by the plaintiff, and, in some circumstances, whether the call for an adjoining survey is locative."

Finding no error in the record, the judgment of the trial court is affirmed.

Affirmed.