## LARRIMORE et al. v. EMANUEL.
### No. 11526.

Court of Civil Appeals of Texas.
San Antonio.

Oct. 17, 1945.

Rehearing Denied Nov. 14, 1945.

Roscoe Runge and Glenn Capps, both of Mason, and Moursund, Ball, Moursund & Bergstrom, of San Antonio, for appellants.

R. E. Lee, of Mason, for appellee.

NORVELL, Justice.

This is an action of trespass to try title, involving the location of the boundary line between Addler Surveys Nos. 37 and 38, situated in Mason County, Texas.

Appellants (plaintiffs below), Julia Larrimore and others, are the owners of Survey No. 37. Arch Emanuel, the appellee, is the owner of Survey No. 38. The tract of land in dispute contains 77.9 acres and is triangular in shape and described in the trial petition as follows:

"Beginning at the N. W. corner of said Survey No. 37 and the N. E. corner of Survey No. 38 in the name of Heinrich Addler, a point from which an old P. O., one of the original bearings, bears South 56 degrees E. 12 varas (one half of this tree is dead, but part of the old marks can be identified) new bearings are marked as follows: L. O. 9" dia. bears S. 33 degrees 45' East 17.9 vrs. mkd: $\overline{\overline{1}}$ do. 9" brs. S. 62 degrees E. 28.2 vrs. mkd: $\overline{\overline{1}}$

"Thence South 12 degrees 32' W. with East line of said Survey No. 38 and the W. line of said Survey No. 37, 2036.8 vrs. to a point for S. W. corner of said Survey No. 37, and S. E. corner of said Survey No. 38, which is also the N. E. corner of the N. W. one fourth (1/4) of H & G N R R Co. Survey No. 35 for the S. W. corner of this tract; from which point a large old P. O. tree, one of the original bearings, bears N. 40 degrees W. 28 vrs. old blaze and hack under same, new bearings are marked: P. O. 16" dia. bears S. 13 degrees 25' East 87.5 vrs. mkd: $\overline{\overline{1}}$ L. O. 9" dia. brs. N. 79 degrees 45' E. 32 vrs. mkd: $\overline{\overline{1}}$

"Thence North 89 degrees 45' E. with N. line of said H & G N RR Co. Sur. No. 35 and the South line of said Survey No. 37, 442 varas to a point in the S. line of said Survey No. 37 and the N. line of said H & G N R R Co. Survey No. 35 for the S. E. corner of this tract;

"Thence North 1990.1 varas to the place of beginning."

Appellee pleaded not guilty, and asserted that the tract described in the petition was a part of Survey No. 38. Appellee

further pleaded that in 1943 a new patent had been issued for Survey No. 37, at the instance of appellants, and that appellants had also secured a deed of acquittance from the State covering the lands described in the new patent. Appellee's prayer was that appellants "take nothing by their suit and that defendant (appellee) go hence with his costs without day; that he have judgment of the court cancelling and holding for naught the Letter Patent No. 149, Vol. 92 and the Deed of acquittance No. 65 Vol. 65 hereinabove mentioned; that he have judgment for the title and possession of the 77.9 acre tract of land described in Plaintiff's first amended original Petition, and for" general relief.

Trial was to a jury and judgment rendered for appellee upon a special issue verdict that appellants take nothing.

The court further set out in the judgment certain metes and bounds describing said Survey No. 38, owned by appellee, and awarded appellee judgment for all lands in said survey, lying west of the east boundary line thereof as fixed and determined by the judgment.

The judgment further decreed that "the Letter Patent No. 149, Vol. 92 dated November 24, 1943, issued by the State of Texas to William G. Hale, Assignee, his heirs and assigns, and the deed of acquittance No. 65, Vol. 5 and dated December 23, 1943, executed by Bascom Giles, Commissioner of the General Land Office, to William G. Hale, his heirs and assigns, for plaintiff Julia Larrimore, be and the same are cancelled and held for naught in so far only as the land lying west of the east boundary line of Survey No. 38, H. Addler, as is fixed and determined by this judgment is concerned."

As we construe the pleadings, the only tract of land in dispute was the triangular piece of 77.9 acres described in the petition. The true North West corner of Survey No. 37 and the North East corner of Survey No. 38 was established by the trial court's judgment as being the point described as such in appellants' petition, i. e., "a point from which an old P. O., one of the original bearings, bears South 56 degrees E. 12 varas," etc. Further, it appears without dispute that the two points described in the petition field notes as and for the South East corner and the South West corner of the 77.9 acre tract are upon the line which is the south boundary line of both Surveys Nos. 37 and 38. The question involved in

this litigation, therefore, is, which of the lines described in the petition field notes is the true boundary line between Surveys Nos. 37 and 38—the line which runs from the undisputed point (N. W. cor. Survey No. 37 and N. E. cor. of Survey No. 38) South 12 degrees 32' W., 2036.8 vrs. to corner, as contended by appellants, or the line which runs from said undisputed point or common corner, South (petition course call reversed) 1990.1 varas to corner?

■ Since the course calls of the original field notes of both Surveys Nos. 37 and 38 were North and South, and East and West, the burden lay upon appellants as plaintiffs below to establish a monument, which would be a call of higher dignity than a call for course, in order to justify the variance of the course call from South to South 12 degrees, 32 minutes West.

This appellants sought to do by establishing the South West corner of Survey No. 38, and then constructing the survey from said point. Appellants requested and the court submitted the following issue:

"Do you find from a preponderance of the evidence that the liveoak tree designated by the witness A. L. Bierschwale (appellants' surveyor) as being eight inches in diameter and bearing S. 53 degrees W 42 varas from the southwest corner of the H. Addler Survey No. 38, as platted by the said A. L. Bierschwale, is one of the same and identical trees marked as a bearing tree for the southwest corner of said H. Addler Survey No. 38 by the surveyor de Montel on the 5th day of July, 1847?"

The jury answered this question, "No."

In order to make clear the issues involved upon this appeal we have prepared a sketch, which consists of a tracing from a photostatic copy of a portion of the Mason County map of 1886, which is a record of the General Land Office. The solid lines upon the sketch show the outlines of the various surveys. We have superimposed upon the 1886 map the boundary lines of the various surveys in the locality as shown upon the Mason County Map of 1921, also a record in the General Land Office. Where the boundaries vary from those disclosed by the 1886 map, we have shown the same by broken lines. We have also shaded the area in dispute in this litigation. The meandering lines from the West boundary of Survey No. 36 to the South boundary of Survey No. 35 represent the Middle Fork of Leon Creek. The creek is shown in different locations upon

the 1886 map and the 1921 map. The location on the earlier map is shown by a solid line, while the location on the 1921 map is shown by a broken line. The map follows:

Surveys Nos. 30, 32, 37, 38, 47 and 49 were all surveyed by Charles de Montel, Deputy Surveyor, Bexar District, in the year 1847. Courses in all the de Montel surveys were North and South, and East and West. All of them, with the exception of Survey No. 32 (950 vrs. x 950 vrs.) were 320 acre surveys, 1900 vrs. x 950 vrs.

Surveys Nos. 35, 36 and Hays 37 (lying to the East of Addler No. 37) were surveyed by H. R. Biberstein, Deputy Surveyor of Mason County, in 1875. Biberstein's courses were North and South and East and West. Surveys Nos. 35 and 36 were 1900 vrs. x 1900 vrs., 640 acres, while Hays No. 37 was a 160 acre survey, 950 vrs. x 950 vrs.

J. D. Hurley, Deputy Surveyor of Mason County, made a re-survey of Survey No. 36 in 1897 and prepared corrected field notes therefor.

At each of the corners of Addler Surveys No. 37 and 38, de Montel called for two bearing trees. At the common corners of the two surveys the bearing trees were designated as follows:

N. W. Cor. of No. 37, N. E. Cor. of No. 38—Post Oak, 5 in. dia., S. 56° E. 12 vrs., and Live Oak, 8 in dia., N. 23° W. 39 vrs. (The location of this corner is not disputed.)

S. W. Cor. of No. 37, S. E. Cor. of No. 38—Post Oak, 10 in. dia., N. 37° W. 36½ vrs., and Post Oak, 12 in. dia., N. 40° W. 38 vrs.

At the North West corner of Survey No. 38, de Montel's designation of bearing trees was Black Jack, 6 in. dia., N. 3° W. 89 vrs., and Post Oak, 10 in. dia., S. 36° W. 115 vrs.

Bearing trees for the South West corner of Survey No. 38 were, Live Oak, 9 in. dia., S. 86° W. 33 vrs., and Live Oak, 8 in. dia., S. 53° W. 42 vrs.

De Montel's work upon Surveys Nos. 37 and 38 was done on July 5, 1847. The next day he ran the lines of the Carl Gaebler Survey No. 47. De Montel began at the South East corner of the Survey, ran West to the South West corner, thence North to the North West corner. His next call is, "Thence East 800 varas to the middle fork of Leon Creek, 950 varas, to a stake for the N. E. corner of this survey, from which a Live Oak, 9 in. dia., brs. S. 86" W. 33 varas, another Live Oak, 8 in. dia., brs. S. 53" W. 42 varas." The bearing trees called for identify this corner (N. E. cor. No. 47) as being the same point as that established by de Montel the day before as the South West corner of Addler No. 38.

De Montel's next call (from N. E. cor. of No. 47) is, "thence South 300 varas to the middle fork of Leon Creek 1900 varas to the beginning." (S. E. cor.)

Biberstein, in 1875, located Hays No. 37 East of Addler No. 37. His beginning point was the North West corner of Survey No. 30, which is the South West corner of Addler No. 37, and he called for de Montel's bearing trees at this corner. Biberstein's course calls were the same as de Montel's, so the West boundary line of Hays No. 37 coincided with the East boundary line of Addler No. 37.

In surveying No. 35, Biberstein called for the South East corner of Addler No. 37 for the North East corner of No. 35, and then ran West 1900 varas to the North East corner of Survey No. 47, for North West corner of No. 35. He there called for the de Montel's bearing trees for N. E. cor. of No. 47 and S. W. cor. of No. 38.

In surveying No. 36, Biberstein began at the North West corner of Survey No. 38 and called for de Montel's bearing trees at this point. The following call of the field notes is, "thence South 1900 varas to a stake for N. W. Cor. No. 35, N. E. Cor. of No. 47, and South East corner of this Survey (which is also S. W. cor. of No. 38) from which a Live Oak, 8 in d. brs. S. 86° W. 33 vrs., Live Oak, 8 in. d., brs. S.

53° W. 42 vrs." This is the dividing line between Surveys Nos. 36 and 38. Bierstein located de Montel's bearing trees and found that the boundary line between Surveys Nos. 36 and 38 was a North and South line.

J. D. Hurley (1897) made a re-survey of No. 36, as well as other surveys in the vicinity. The changes in the lines and location of various surveys shown upon the 1921 map of the General Land Office probably resulted from Hurley's surveys in the area.

As to Survey No. 36, Hurley began at a point which he described as "the N. E. Cor. of Sur. No. 47, in name of Carl Gaebler for S. E. Cor. of this sur. from which a L. O. 8 in. brs. S. 53° 42 varas (marked $\bar{\underline{0}}$ old)." Since the mark described was de Montel's mark, it is apparent that Hurley believed he had located one of the two original bearing trees called for by de Montel in locating the South West corner of Survey No. 38, and the North East corner of Survey No. 47. In his next call (from S. E. cor. to N. E. cor. of Survey No. 36, where de Montel and Biberstein called for North and South) Hurley ran "N. 10° 45' E. 1965 vrs. to a stone m'd for the N. W. cor. of Sur. No. 38 in name of H. Addler, from which a Blk. Jack brs. N. 3° W. 89 vrs. a P. O. brs. S. 36° E. 115 (old marks thus, $\underline{\bar{0}}$)."

This raises the question of whether or not the true South West corner of Survey No. 38, as originally established by de Montel, was where Hurley said it was in establishing his beginning point for his re-survey of Survey No. 36.

A. L. Bierschwale, surveyor for the appellants, testified that he located the North West corner of Survey No. 38 by identifying one of the bearing trees mentioned in the original field notes of the Survey. He also found the tree mentioned in the Hurley re-survey as a bearing tree of the South East corner of Survey No. 36, which was also the South West corner of Survey No. 38. This is the tree inquired about in Special Issue No. 1. This tree was a Live Oak, very old, about 14 inches in diameter, with dead limbs at the top. He found indications of a · number of axe marks on the tree, but these could not be identified as de Montel's original marks. The bearing of this tree from where Hurley established the South East corner of Survey No. 36 was S. 53° W. 42 vrs., which was the course and distance of one of the bearing trees mentioned by de Montel for the South West corner of Survey No. 38. Taking the point established by the bearing tree mentioned (Hurley's point) as the South East corner of Survey No. 36, and the South West corner of No. 38, Bierschwale ran East 950 varas, the distance called for by de Montel in his field notes of No. 38, and then 11 varas further to pick up a large Post Oak tree upon the course set by Montel for a bearing tree at the South East corner of No. 38 and the South West corner of No. 37. De Montel's call was North 40° West 38 varas. Bierschwale found the distance to the tree upon the course mentioned was 28 varas. He found a sunken place in the ground which, assuming 28 varas to be the proper distance call, would have been the proximate position of the second bearing tree called for by de Montel at this corner. Bierschwale took this large Post Oak to be one of the original de Montel bearing trees, although no issue was submitted to the jury as to whether it was or not.

It was appellee's theory that the original de Montel bearing trees for both the South West corner and the South East corner of Survey No. 38 are gone, and consequently other evidence must be resorted to in order to establish these corners. No trees which could possibly fit de Montel's description can now be found near the places where appellee contends these corners are located. Bierschwale testified that in these areas there were only scrub Live Oak and Mesquite, and that there were no Post Oak near the point where appellee claims that the South East corner of Survey No. 38 is properly located.

Appellee lays much emphasis, however, upon de Montel's passing call for the middle fork of Leon Creek in his field notes for Gaebler Survey No. 47. This call from the North West corner of No. 47 is East 800 varas to the middle fork of Leon Creek 950 varas to the North East corner of No. 47, which is the South West corner of No. 38. This would place the South West corner of No. 38, 150 varas east of the middle branch of Leon Creek. Hurley's point for the South East corner of No. 36 and the South West corner of No. 38, is admittedly West of Leon Creek, although the General Land Office Map of 1921 shows it otherwise. It is apparent that on this map the position of the creek

was shifted so as to make it run West of the point Hurley selected for the South East corner of No. 36 (S. W. cor. of No. 38).

The probative effect of this passing call is somewhat weakened by the fact that de Montel's closing call from the North East corner to the South East corner of No. 47 is "thence South 300 varas to the middle fork of Leon Creek 1900 varas to the beginning."

Bierschwale testified, and the fact seemed to be conceded, that the creek is only about 90 varas south of the North East corner of No. 47 as located by the 150 vara passing call, upon the line which is conceded to be the South boundary line of Survey No. 38. A point which would satisfy both of de Montel's passing calls to the creek (150 varas and 300 varas) would be a considerable distance off the line which is admitted to be the South boundary line of Surveys Nos. 36, 38 and 37 and the North boundary line of Surveys Nos. 48, 47 and 35. There is no evidence that the position of the creek has changed since the date of de Montel's survey.

As to the tree which Bierschwale (and Hurley) took for one of the de Montel bearing trees for the South West corner of No. 38, A. G. Farmer, appellee's surveyor, testified as follows:

"I stood off at a distance and examined that tree. I find it to be a fact that in examining markings on trees, you can discern it better if you stay off a piece, because you generally get the ghost of the mark on the tree. Then I went up closer, and I couldn't identify any markings on that tree. I didn't see anything on that tree that I would be willing to accept as a marked tree, I couldn't identify any markings on it. It had the course and distance from the fence corner, but I didn't see any markings."

As to the tree which Bierschwale took for one of the de Montel bearing trees for the South East corner of No. 38, Farmer testified as follows:

"I examined the tree for markings, that is, old markings described in the original patent, and I didn't find any markings, I couldn't discern any markings, and I examined it very closely both at a distance and up near it, and I could see no indications of old markings; but facing the corner there was what I call a snarl, it is a rough place and an upraised part of the tree like you commonly see on trees, and

just below this snarl was one axe cut, and that is all I could see, one axe cut, and that, I think, would be about three-quarters of an inch or maybe an inch deep; I examined the tree for similar snarls, as I term it, and I saw a number of like snarls on this tree higher up. My construction of a snarl is that it is where some small limb has died and the cambium layer grew over that or grew up around that limb until it decayed, and then the bark grew over the dead part. * * *

"The cambium layer is that portion of the tree that carries the sap, between the wood and the bark, and it gives growth to the bark of the tree and life to the tree, and when that cambium layer is destroyed it is permanently destroyed, and an axe mark cut through the cambium layer into the wood fibre will show on the wood fibre."

Farmer was of the opinion that the axe cut mentioned had not penetrated the cambium layer of the tree and that the axe mark was not 90 years old.

We are of the opinion that under the evidence above set out, it can not be said that it was established as a matter of law that the South West corner of Survey No. 38 was at the point selected by Hurley and later by Bierschwale.

While Hurley, in his field notes (1897), stated positively that he identified de Montel's mark on the Live Oak tree, which he took for an original bearing tree, Biberstein in 1875 also positively identified two of de Montel's bearing trees for the South West corner of Survey No. 38. Biberstein checked de Montel's North and South courses on the West—dividing line between Surveys Nos. 36 and 38, and on the east—dividing line between Addler No. 37 and Hays No. 37. It would be an extraordinary circumstance for both de Montel and Biberstein to make mistakes in course of 10 degrees and 45 minutes. Further, Biberstein's field notes fit in with the general configuration of the surveys in the area, so that the indications are that in 1875 Biberstein identified a different Live Oak from that selected by Hurley in 1897, as de Montel's bearing tree for the South West corner of No. 38. Further, the 150 vara passing call to Leon Creek in the original field notes for Survey No. 47 corroborates the theory that de Montel was not mistaken in his course call to an extent of 10 degrees and 45 minutes as stated by Hurley.

■ We conclude that the jury's answer to Special Issue No. 1 has support in the evidence, and that this answer determines the judgment.

The trial court submitted three additional issues, and the jury found (a) that the South West corner of No. 38 was located by de Montel east of the middle fork of Leon Creek; (b) that said corner was located 150 varas from said creek, and (c) that the length of the South boundary line of Survey No. 38 was 950 varas. Based upon these findings, the court set the South West corner of No. 38 at a point in the North boundary line of Survey No. 35, 1100 varas east of the middle fork of Leon Creek.

While the 150 vara passing call to the creek (950 less 800) for the North East corner of Survey No. 47 (S. W. cor. of No. 38) checks fairly close with de Montel's course calls, it appears that a line extended to the West from the South West corner of No. 38 (as determined by the 150 vara passing call to the creek) a distance of 950 varas, would fall a few varas short of reaching the point on the north boundary line of Survey No. 35, which would be established by running a south course from the North East corner of No. 38 and the North West corner of No. 37, which is an undisputed point.

Farmer testified that in the absence of monuments it was, under certain circumstances, good surveying practice to treat reliable passing calls as bearing calls and thus establish corners and points. Farmer further testified that this practice was approved by the General Land Office, and this was apparently the theory adopted by the court in establishing the point for the South terminus of the dividing line between Surveys Nos. 37 and 38.

However, in this case, we see no need for resorting to a passing call of another survey (No. 47) in order to establish the South West corner of Survey No. 38, and then determine the South East corner of said survey (the point in dispute) by giving effect to de Montel's distance call of 950 varas.

In view of the jury's finding in this case, there is no basis for assuming that de Montel's course calls are inaccurate. Consequently, the dividing line between Surveys No. 37 and No. 38 is determined by beginning at the North West corner of Survey No. 37, which is also the North East corner of Survey No. 38, and giving effect to the South course call contained in de Montel's field notes for said Survey. Simmons v. Weis, Tex.Civ.App., 131 S.W.2d 103, 7 Tex.Jur. 225, § 72.

■ This holding does not substantially affect the trial court's judgment which decreed that appellants take nothing. The effect of this judgment was to vest in appellee title to the 77.9 acre tract described in the petition. Wilson v. Swasey, Tex. Sup., 20 S.W. 48. The petition correctly describes the true dividing line between Surveys Nos. 37 and 38, and the judgment will be reformed so as to adopt this line.

That part of the trial court's judgment providing that appellants take nothing of their action as against appellee is affirmed.

The West boundary line of Addler Survey No. 37, and the East boundary line of Addler Survey No. 38, is established as a line which begins at the North West corner of Survey No. 37 and the North East corner of Survey No. 38, in the name of Heinrich Addler, a point from which an old Post Oak, one of the original bearings, bears South 56 degrees East a distance of 12 varas (one-half of this tree is dead, but part of the old marks can be identified) new bearings are marked as follows: Live Oak, 9 inches in diameter, bears South 33 degrees 45 minutes East, a distance of 17.9 varas, marked $\bar{I}$, and another Live Oak, 9 inches in diameter, bears South 62 degrees East a distance of 28.2 vares, marked $\bar{I}$; thence South a distance of 1900.1 varas to a point on the North boundary line of H. and G. N. R. R. Survey No. 35, which point is the South West corner of said Survey No. 37 and the South East corner of said Survey No. 38.

■ It is further ordered that the Letter Patent No. 149, Vol. 92, dated November 24, 1943, issued by the State of Texas to William G. Hale, Assignee, his heirs and assigns, and the deed of acquittance No. 65, Vol. 5, dated December 23, 1943, executed by Bascom Giles, Commissioner of the General Land Office, to William G. Hale, his heirs and assigns, for appellant Julia Larrimore, be, and the same are hereby, cancelled and held for naught insofar as they concern and purport to cover lands lying West of the East boundary line of Heinrich Addler Survey No. 38, as said East boundary is herein fixed and determined.

The judgment of the trial court, as reformed, is affirmed.